UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALLIED HOME MORTGAGE CAPITAL,
    Plaintiff,

    v.                          CIVIL ACTION NO.
                                      12-10158-GAO

PETER BELLI,
    Defendant,

    and

DIAMOND FUNDING CORPORATION,
    Trustee Process
    Defendant.

**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION TO AMEND THE FIRST**
**ACTION ON JUDGMENT**
**(DOCKET ENTRY # 32)**

**REPORT AND RECOMMENDATION RE:**
**DEFENDANT'S MOTION TO DISMISS ACTION ON JUDGMENT AND TRUSTEE**
**PROCESS (DOCKET ENTRY # 4); PLAINTIFF'S MOTION FOR DEFAULT**
**JUDGMENT AGAINST TRUSTEE PROCESS**
**(DOCKET ENTRY # 23)**

**July 25, 2012**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss the trustee
summons filed by defendant Peter Belli ("Belli") and trustee
defendant Diamond Funding Corporation ("Diamond") (collectively
"defendants"). (Docket Entry # 4). Plaintiff Allied Home
Mortgage Capital ("Allied") filed a motion for a default judgment
against Diamond for not answering a trustee summons (Docket Entry
# 23) and a motion to amend seeking to add three additional
claims to the complaint (Docket Entry # 32).

## BACKGROUND

Plaintiff filed the complaint against defendants on January 30, 2012, to collect a money judgment issued by the court in Allied Home Mortg. Capital Corp. v. Peter Belli and Regency Serv. Comp., Inc., Civil Action No. 07-11597-NG, on March 8, 2011. (Docket Entry # 1, ¶ 6). The final judgment was in favor of plaintiff and against Belli for $2,394,857.20 with interest at 12% per annum and costs of $10,928.49. (Docket Entry # 1, ¶ 6). The one count complaint in the case at bar is against Diamond and Belli, identified as the chief executive officer ("CEO") of Diamond, for enforcement of the judgment. (Docket Entry # 1, ¶¶ 4, 14-16).

On December 9, 2011, the court in Allied issued a writ of execution to enforce the judgment. (Docket Entry # 1, ¶ 7). A deputy sheriff made demand upon Diamond on December 14, 2011. (Docket Entry # 1, ¶ 7). Diamond did not comply with the writ and in a response dated December 23, 2011, Belli stated there was an Internal Revenue Service ("IRS") lien with priority over the judgment. (Docket Entry # 1, ¶¶ 7-9). On August 12, 2008, the IRS issued a Notice of Levy to Belli for $505,430.27. On March 18, 2011, however, the IRS temporarily closed the case. (Docket Entry # 1, ¶ 9). Belli has not paid plaintiff any funds in connection with the 2011 final judgment. (Docket Entry # 1, ¶ 13).

On the same day plaintiff filed the complaint, plaintiff filed an ex parte motion for a temporary restraining order and an attachment by trustee process for Belli's ownership and/or the goods, effects and credits of Diamond up to the amount of the judgment, interest and costs. (Docket Entry # 2). On February 3, 2012, defendants filed the motion to dismiss the complaint and the trustee process. (Docket Entry # 4). During oral argument on May 30, 2012, defendants clarified that they primarily seek to dismiss a trustee summons served on Diamond on March 12, 2012.

On February 6, 2012, the district judge allowed the motion for a temporary restraining order thereby enjoining Diamond and Belli from inter alia liquidating or transferring Diamond's assets. The district judge also ordered the attachment by trustee process against Diamond "of the goods, effects and credits, and the beneficial, equitable, and/or ownership interests" of Belli. (Docket Entry # 5). After defendants filed the motion to dismiss, plaintiff served the trustee summons requesting the disclosure of assets held by Diamond and owned by Belli.[1] (Docket Entry # 13).

On March 23, 2012, defendants filed an amended answer that failed to answer each paragraph in the complaint and included a number of affirmative defenses. (Docket Entry # 18). On March 31, 2012, defendants filed another answer that responded to each paragraph in the complaint. (Docket Entry # 21). Within the 20

---

[1] Belli died in February 2012. (Docket Entry ## 25 & 36).

day period to reply to the trustee summons,[2] Allied mailed a letter to defendants' counsel alerting him that neither the answer nor the amended answer constituted a reply to the trustee summons. Allied's counsel further explained that a trustee summons "requires the filing of a 'disclosure under oath' of specified information by Diamond Funding." (Docket Entry # 39-1). Simply put, Allied correctly notes that Diamond had not properly responded to the trustee summons.

After the 20 day period expired, Allied filed the motion for a default judgment against Diamond for not answering the trustee summons. (Docket Entry # 23). Diamond filed an opposition to the motion (Docket Entry # 25) and Allied filed a subsequent response (Docket Entry # 39).

On May 7, 2012, Allied filed the motion to amend to include additional claims based on information learned during discovery. (Docket Entry # 32). On May 18, 2012, defendants filed an opposition to the motion to amend. (Docket Entry # 36).

I. MOTION TO DISMISS (DOCKET ENTRY # 4)

Defendants, as clarified during oral argument, move to dismiss the trustee summons as defective based on improper and insufficient process under Rule 12(b)(4), Fed. R. Civ. P. ("Rule 12(b)(4)"), and failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. ("Rule 12(b)(6)"). Defendants contend that the

---

[2] "A trustee shall file, but need not serve, his answer, under oath, or signed under the penalties of perjury, within 20 days after the service of the trustee summons upon him, unless the court otherwise directs." Rule 4(d), Mass. R. Civ. P.

trustee summons was insufficient for failing to comport with the
wage exemption disclosures required by Rule 4.2(b) of the
Massachusetts Rules of Civil Procedure ("Rule 4.2") and
Massachusetts General Laws chapter 246, section 28 ("section
28").  Defendants also argue that the ex parte order by the
district judge violates Rule 4.2(g).

Allied contends that the Rule 12(b)(4) motion is premature
because it has not served defendants with the complaint and the
time period has yet to run.  (Docket Entry # 8).  The argument is
moot because, as previously noted, defendants clarified on May
30, 2012, that they only seek to dismiss the trustee summons.
Allied also argues that compliance with section 28, the wage
exemption disclosure statute cited by defendants, was not
required because Belli was a "1099 contractor"[3] and the Rule
12(b)(6) motion was therefore improper and baseless.  (Docket
Entry # 8).  Allied additionally alleges that Diamond is in
possession of Belli's wages and his ownership and/or beneficial
interest in the assets of Diamond (Docket Entry # 2) and that
Allied's March 8, 2011 money judgment has priority over the IRS
Notice of Levy issued to Belli (Docket Entry # 2, ¶ 9).  Finally,

---

[3]  A "1099 contractor" is also referred to as an independent
contractor.  <u>See</u> <u>U.S. v. President and Fellows of Harvard Coll.</u>,
323 F.Supp.2d 151, 170 (D.Mass. 2004) (IRS Form 1099 is used for
payments to independent contractors rather than a Form W-2 for
employees).  An independent contractor is "[o]ne who is entrusted
to undertake a specific project but who is left free to do the
assigned work and to choose the method for accomplishing it.  It
does not matter whether the work is done for pay or
gratuitously."  <u>Blacks Law Dictionary</u> (2009).

Allied maintains that the district judge's temporary restraining order was properly ex parte in accordance with the provisions of Rule 4.2(g). (Docket Entry # 8).

STANDARD OF REVIEW

Rule 12(b)(4) provides that insufficient process is a defense that may be asserted by motion. The requirements for process and service are contained in Rule 4, Fed. R. Civ. P., which allow the plaintiff 120 days to serve the defendant with a complaint. Rule 4(m), Fed. R. Civ. P.; see, e.g., Mensah v. Dept. of Mental Retardation, 2007 WL 4365346, *3 (D.Mass. Dec. 10, 2007) (if service is not made "'within 120 days after the filing of the complaint, *the court . . . shall dismiss the action without prejudice* to that defendant or direct that service be effected within a specified time'") (quoting Rule 4(m), Fed. R. Civ. P.) (emphasis in original).

Rule 12(b)(4) was "designed to challenge irregularities in the contents of the summons." Chilicky v. Schweiker, 796 F.2d 1131, 1136 (9th Cir. 1986). Therefore, "A motion under 12(b)(4) *concerns the form of the process* rather than the manner or method of its service." U.S. v. Levine, 2012 WL 1570811, *1 (D.Mass. May 1, 2012) (emphasis in original). A Rule 12(b)(4) motion is only appropriate "to challenge noncompliance with a provision of [Fed.R.Civ.P. 4(b)] or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons." Id.; accord Cockerham v. Rose, 2011 WL 1515159, *1

(N.D.Tex. Apr. 18, 2011) ("'a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons'") (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (Supp. 2010)).

Defendants also summarily refer to Rule 12(b)(6) in a single sentence. They posit that the defective summons "demonstrates that the process is invalid or insufficient and that the complaint must be dismissed pursuant to FRCP 12(b)(6) for failing to state a valid cause of action." (Docket Entry # 4). "To survive a motion to dismiss [under Rule 12(b)(6)], the complaint must allege 'a plausible entitlement to relief.'" Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

DISCUSSION

Defendants move to dismiss the trustee summons pursuant to Rule 12(b)(4) for improper and insufficient process. They also summarily seek dismissal of the summons under Rule 12(b)(6).

The only trustee summons was issued on March 12, 2012. Defendants filed the motion to dismiss on February 3, 2012, prior to the issuance of the summons. First, defendants argue that the trustee summons lacked the amount of wages exempt from attachment required by Rule 4.2(b).[4] Second, defendants similarly argue

---

[4]  Rule 4.2(b) states in pertinent part that:

that the trustee summons lacked the required advisement that "85%
of Belli's wages or contract payments [are] exempt from
attachment and must be paid over to Belli" in accordance with
section 28.  (Docket Entry # 4).  Third, defendants maintain that
the trustee summons should be dismissed pursuant to Rule
12(b)(6).  Finally, defendants submit that the ex parte order
allowing the motion for trustee attachment did not meet the
standards under Rule 4.2(g).

Section 28 states that if wages "are attached for a debt or
claim, an amount not exceeding the greater of 85 per cent of
debtor's gross wages or 50 times the greater of the federal or
the Massachusetts hourly minimum wage . . . shall be exempt."
Mass. Gen. L. ch. 246, § 28.  Section 28 further requires that
"[e]very writ of attachment shall contain a statement of the
amount exempted from attachment under this section and also a
direction to the trustee to pay over the exempted amount as
provided in this section."  Mass. Gen. L. ch. 246, § 28; <u>see</u>
<u>Elias Bros. Rests., Inc. v. Acorn Enters., Inc.</u>, 931 F.Supp 930,
934 (D.Mass. 1996) (section 28 is "the statute governing
attachment by trustee process under Massachusetts law"); <u>Gibbs v.</u>
<u>White</u>, 2003 WL 291892, *2 (Mass.Super. Feb. 11, 2003) ("M.G.L.A.

---

. . . if wages, a pension, or a bank account is sought to be
attached, [the trustee summons] shall notify him of such
amount of wages, pension, or bank account as are by law
exempt from attachment and shall direct him to pay over to
the defendant the exempted amount.

Rule 4.2(b), Mass. R. Civ. P.

c. 246, § 28, entitled 'Wages and pensions; exemption; exceptions,' governs trustee process").

The March 12, 2012 trustee summons contained a wage exemption notification[5] but incorrectly stated the wage exemption as "$125.00," which was the language used in a previous iteration of section 28.[6] The wage exemption clause in the trustee summons, therefore, does not meet the statutory requirements of section 28 and Rule 4.2(b).

"On a motion to dismiss brought under Fed.R.Civ.P. 12(b)(4), insufficiency of process, or 12(b)(5), insufficiency of process of service, the plaintiff must establish prima facie evidence that there was sufficient process and service of process." Devin v. Schwan's Home Servs., Inc., 2005 WL 1323919, *3 (D.Minn. May 20, 2005); 5B C. Wright, A. Miller, M. Kane & R. Marcus, Federal Practice & Procedure § 1353 (2004) ("great weight of the case law

---

[5] In pertinent part, the trustee summons states:

> If the credits of the said defendant which are in your hands or possession include wages for personal labor or personal services of said defendant, you are hereby notified that an amount not exceeding $125.00 per week of such wages are exempt from this attachment and you are directed to pay over such exempted amount to said defendant in the same manner and at the same time as each such amount would have been paid if this attachment had not been made.

(Docket Entry # 13).

[6] Effective on April 7, 2011, "the greater of 85 per cent of the debtor's gross wages or 50 times the greater of the federal or the Massachusetts hourly minimum wage for each week or portion thereof" replaced "$125" in section 28. 48 Jordan L. Shapiro, et al., Massachusetts Practice:  Collection Law § 5:29.1 (Supp. 2011).

is to the effect that the party on whose behalf service has been made has the burden of establishing its validity").

To establish a prima facie case of sufficient process, Allied argues that the wage exemption was not required in the trustee summons because Belli claimed to be a "1099 contractor" in accord with his "recruiting agreement" with Diamond (Docket Entry # 4-1). Section 28 and Rule 4.2 do not define the term "wages" or make a distinction between employees and independent contractors.[7] The distinction that Allied makes between wage earning employees and non wage earning independent contractors appears based on the Massachusetts Wage Act's definition of an employee in Massachusetts General Laws chapter 149, section 148B ("section 148B").[8]

Massachusetts courts "construe statutes that relate to the same subject matter as a harmonious whole and avoid absurd

---

[7]  Generally, "state wage garnishment exemption statutes must comply with the federal Consumer Credit Protection Act [, 15 U.S.C.A. §§ 1671 to 1677]," but "[t]here is a split of authority [among the states] as to whether the exemption statute applies to independent contractors." In re Duncan, 140 B.R. 210, 213 (E.D.Tenn. 1992). "Some courts have relied on the language of the statute and the congressional intent behind the federal act to deny protection other than to wage earners in an employee-employer relationship." Id. Other courts, however, "relying on identical statutory language and their interpretation of the congressional intent have extended protection to independent contractors." Id. It is not settled in Massachusetts whether independent contractors are paid "wages" in terms of section 28 and Rule 4.2(b). That said, it is not necessary to reach this issue because Allied fails to establish a prima facie case that Belli was an independent contractor.

[8]  The Massachusetts Wage Act applies only to individuals classified as employees under the statute and not to independent contractors. See Stanton v. Lighthouse Fin. Servs., Inc., 621 F.Supp.2d 5, 10 (D.Mass. 2009).

results." <u>Town of Canton v. Comm'r of the Mass. Highway Dept.</u>, 919 N.E.2d 1278, 1285 (Mass. 2010). "'When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose.'" <u>Commonwealth v. Madden</u>, 939 N.E.2d 778, 782 (Mass. 2010) (quoting <u>Commonwealth v. Morasse</u>, 842 N.E.2d 909, 912 (Mass. 2006)). "'We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions.'" <u>Id.</u>; <u>see</u>, <u>e.g.</u>, <u>U.S. Trust, fka U.S. Trust-Middlesex v. American Travel, Inc.</u>, 1995 WL 1146207, *4 n.9 (Mass.Super. Sept. 14, 1995) (applying the definition of "wages" from Mass. Gen. L. ch. 149, § 148 to the term "wages" contained in Mass. Gen. L. ch. 246, § 32, a statute applicable to trustee process, because both statutes "are designed to protect the fruits of one's own personal labors").

Section 148B defines an individual performing a service as an employee under Massachusetts General Laws chapters 149 and 151 unless:

> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
> (2) the service is performed outside the usual course of the business of the employer; and,
> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. L. ch. 149, § 148B(a).  In a civil action against an employer under section 150 of Massachusetts General Laws chapter 149, the burden falls on the employer to establish the three elements of section 148B.  See Newport v. New A.D.E., Inc., 2011 WL 4790769, *3 (D.Mass. Oct. 3, 2011).  Here, as previously explained, Allied has the burden to establish prima facie evidence of sufficient process.  See Devin v. Schwan's Home Servs., Inc., 2005 WL 1323919 at *3; 5B C. Wright, A. Miller, M. Kane & R. Marcus, Federal Practice & Procedure § 1353 (2004).  This burden entails a showing that Belli is not an employee.

Defendants cite Oliveira v. ICLB Inc., 2010 WL 2102991 (Mass.App.Div. Mar. 30, 2010), to argue that, "It does not matter whether Belli is an independent contractor or an employee, either can be paid wages."  (Docket Entry # 12).  While Oliveira does not entirely support defendants' position, the case does stand for the proposition that a person hired as an independent contractor and issued an IRS Form 1099 form can be considered an employee under section 148B of the Massachusetts Wage Act.  See Id. at *1-3.

Defendants continue to assert that Belli was only employed as an independent contractor by Diamond.  The complaint however states that, "Belli is employed by Diamond Funding as its Chief Executive Officer" (Docket Entry # 1, ¶ 4) and that Allied is seeking to recover his "wages" (Docket Entry # 1, ¶ 15).  While in general, the complaint does not contain "information that is

relevant to the disposition of [Rule 12(b)(4) and Rule 12(b)(5)]
motions," when the complaint does "contain allegations that bear
on certain process-related questions, . . . these averments
generally will be presumed to be true." 5C C. Wright, A. Miller,
M. Kane & R. Marcus, Federal Practice & Procedure § 1363 (2004).
In deciding a Rule 12(b)(4) motion, courts may consider well
pleaded facts in the complaint and affidavits in the record. See
Foster v. Bridgestone Ams., Inc., 2011 WL 3606983, *1 n.2
(S.D.Ala. Aug. 15, 2011). Belli's status as the CEO of Diamond
directly contradicts Allied's assertion that a wage exception was
not required in the trustee summons. See Stanton v. Lighthouse
Fin. Servs., 621 F.Supp.2d at 11-13 (finding that President of a
company is employee under Massachusetts Wage Act).

Because Allied has not established a prima facie case that
Belli should be classified as an individual other than an
employee, the wage exemption clause detailed in section 28 was
required by Rule 4.2(b). Allied's trustee summons is therefore
quashed without prejudice.[9] Allied may effect proper service of
the trustee summons upon Diamond by August 27, 2012. See
generally Riverdale Mills Corp. v. U.S. Dept. of Transp. Fed.
Aviation Admin., 225 F.R.D. 393, 395-96 (D.Mass. 2005) (granting
the plaintiff 30 days to effect proper service despite exceeding

---

[9] Accordingly, it is not necessary to address defendants' same
brevis argument that the summons is subject to dismissal under
Rule 12(b)(6).

the time period for service under Rule 4(m) without a showing of good cause).

Finally, defendants argue that the February 6, 2012 Order was incorrect because of a failure to make the proper showing of a clear danger. To the extent defendants seek reconsideration of the order, they fail to make a sufficient showing. See Ellis v. U.S., 313 F.3d 636, 647-48 (1st Cir. 2002) (setting out parameters for reconsideration and noting that "doubt about the correctness of a predecessor judge's rulings" is insufficient). In any event, "Mass. R. Civ. P. 4.1(g) and the counterpart Rule 4.2(h) govern the dissolution of an attachment granted ex parte." Latorraca v. Centennial Techs. Inc., 583 F.Supp.2d 208, 211 (D.Mass. 2008), aff'd sub. nom. Latorraca v. Taniki Fin. Corp., 2010 WL 3245365 (1st Cir. Aug. 18, 2010). A defendant whose property is attached pursuant to trustee process under an ex parte order may "move [for] the dissolution or modification of the trustee process" and "[a]t such hearing the plaintiff shall have the burden of justifying any finding in the ex parte order which the defendant has challenged by affidavit." Rule 4.2(h), Mass. R. Civ. P.; see Aetna Cas. & Sur. Co. v. Rodco Autobody, 138 F.R.D. 328, 332 (D.Mass. 1991) ("initial burden at the hearing" to dissolve ex parte attachment rests "upon the defendant to introduce sufficient evidence by testimony or affidavit to challenge any finding upon which the issuance of the ex parte order rested"). Here, defendants fail to provide

testimony or affidavits to support their challenge to the ex parte order.

II. <u>MOTION FOR DEFAULT (DOCKET ENTRY # 23)</u>

Allied seeks a default judgment under Rule 55, Fed. R. Civ. P. ("Rule 55"), against Diamond for failing to answer the trustee summons within 20 days. (Docket Entry # 23). Allied also argues that Diamond's failure to respond to the trustee summons within 20 days violates Rule 4.2(d), Mass. R. Civ. P., and Massachusetts General Laws chapter 246, section 18 ("section 18"). (Docket Entry # 23, ¶¶ 2, 7). Allied seeks a judgment in the full amount of the trustee process pursuant to Massachusetts General Laws chapter 246, section 46 ("section 46"). (Docket Entry # 23, ¶ 8).

Diamond maintains that Allied must first obtain an entry of a default from the clerk before obtaining a default under Rule 55(b). Diamond also points out that defendants answered the complaint on two occasions by filing the answer and thereafter the amended answer. Next, Diamond argues that the filing of the motion to dismiss extended the time to file the answer to 14 days after a court ruling under Rule 12(a)(4). Accordingly, the time to file an answer has not commenced pursuant to Rule 12(a)(4). (Docket Entry # 25, ¶¶ 1-2). Diamond also argues that the motion to dismiss provided Allied with the substance of an answer to the trustee summons and that Massachusetts General Laws chapter 246,

section ten ("section ten") and section 18 do not require the disclosure to be under oath.  (Docket Entry # 25, ¶¶ 3-8).

DISCUSSION

Turning to Diamond's argument that a default judgment is premature under Rule 55, default is a two step process that requires the entry of a default by the clerk prior to the entry of a default judgment.  See Hudson v. Maynard, 2010 WL 2757130, *1 (W.D.Mich. May 26, 2010) ("[e]ntry of a default is a prerequisite to obtaining a default judgment"); 10A C. Wright, A. Miller, M. Kane & R. Marcus, Federal Practice & Procedure § 2682 (1998) (before "obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)"); see, e.g., UMG Recordings, Inc. v. Stewart, 461 F.Supp.2d 837, 840 (S.D.Ill. 2006) (denying motion for;1320;1320 default judgment as premature given absence of entry of;1329;1329 default).

Allied has not sought or obtained an entry of a default under Rule 55(a).  Accordingly, it is premature to request a default judgment under Rule 55(b).  See 10A C. Wright, A. Miller, M. Kane & R. Marcus, Federal Practice & Procedure § 2682 (1998).

In addition, under Rule 12(a)(4)(A), a "responsive pleading must be served within 14 days after notice of the court's action."  See McDonald v. Overnite Express, 2009 WL 2017715, *7 (D.Minn. July 10, 2009) (recognizing that Rule 12(a)(1) requires party to "serve a 'responsive pleading'" and that "[a] motion to

dismiss under Rule 12(b)(6) for failure to state a claim may be filed in lieu of an answer"); _Crane v. Mem'l Hosp._, 2008 WL 4693244, *2 (D.Utah Oct. 22, 2008) ("a Motion to Dismiss is a responsive pleading and comprises 'plead[ing] or otherwise defend[ing]' under Rule 55").  Accordingly, even entry of a default is premature at this point in time.

Allied also relies on Rule 4.2(d) as a basis for default. Rule 69(a), Fed. R. Civ. P. ("Rule 69(a)"), provides that proceedings to enforce a money judgment "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  Allied's action to enforce the court's money judgment in _Allied Home Mortg. Capital Corp. v. Peter Belli and Regency Serv. Comp., Inc._, Civil Action No. 07-11597-NG, is undeniably a post judgment proceeding for enforcement within the meaning of Rule 69(a).

Courts "consistently read Rule 69(a) as limiting all federal process on money judgments to the type of process available under state law."  _Gabovitch v. Lundy_, 584 F.2d 559, 561 (1st Cir. 1978) ("[p]etitioner's failure to comply with state procedure in attaching a bank account, as required by F.R.C.P. 69(a), made the writ ineffective"); _see_, _e.g._, _Aetna Cas. & Sur. Co. v. Markarian_, 114 F.3d 346, 349-50 (1st Cir. 1997) (enforcement of judgment in federal court is governed by Rule 69, "which provides that the procedures to be used are those of the state in which

the district court sits, unless there is an applicable federal statute").

In Massachusetts, trustee process is governed by Massachusetts General Laws chapter 246 and implemented by Rule 4.2. Trustee process is available to a plaintiff after commencement of a case to secure judgment. Rule 4.2(a), Mass. R. Civ. P. "Although pre-judgment attachment is the norm, 'there appears to be no prohibition against a plaintiff seeking approval of a trustee attachment *after* judgment has been entered.'" Latorraca v. Taniki Fin. Corp., 2010 WL 3245365, *2 (1st Cir. Aug. 18, 2010) (quoting 48 Jordan L. Shapiro et al., Massachusetts Practice: Collection Law § 5:54 (3d ed. & Supp. 2010), with emphasis in original).[10]

To date, Allied has not served Diamond with a trustee summons that complies with section 28 and Rule 4.2(b). Accordingly, the motion for default is also premature under Rule 4.2. See Rule 4.2(d), Mass. R. Civ. P. (an answer by a trustee must be "under oath, or signed under the penalties of perjury, within 20 days after the service of the trustee summons upon him").

In sum, the motion for a default judgment is premature. It

---

[10] Although designated "unpublished," Rule 32.1 provides that, "A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (I) designated as 'unpublished,' 'not for publication,' 'nonprecedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007." Rule 32.1, Fed. R. App. P.

neither complies with Rule 55 nor with Rule 4.2.

III.  <u>MOTION TO AMEND (DOCKET ENTRY # 32)</u>

Allied moves for leave to amend the complaint under Rule 15, Fed. R. Civ. P. ("Rule 15").  (Docket Entry # 32).  Allied proposes to amend the complaint to include a statutory and a common law reach and apply claim and a Uniform Fraudulent Transfer Act ("UFTA")[11] claim against Diamond based on information learned in discovery.  (Docket Entry # 32).

Defendants assert that the proposed amendment is futile because the claims are not sufficiently detailed or plausible. (Docket Entry # 36).  Defendants further argue that Allied's unclean hands eliminate any claim in equity and the proposed claims are based on speculation or fabricated.  (Docket Entry # 36).  As a final matter, defendants argue that the complaint was a reach and apply claim and therefore subject to dismissal and summary judgment.  (Docket Entry # 36).

DISCUSSION

Rule 15(a) instructs "that leave to amend a complaint 'shall be freely given when justice so requires.'"  <u>Hatch v. Dep't for Children, Youth and Their Families</u>, 274 F.3d 12, 19 (1st Cir. 2001) (quoting Rule 15(a)).  In practice, this means that a denial of a motion to amend "'will be upheld so long as the record evinces an arguably adequate basis for the court's decision (e.g., futility, bad faith, undue delay, or a dilatory

---

[11]  The UFTA is codified at Massachusetts General Laws chapter 109A.

motive on the movant's part).'"  Id.; accord Maine State Bldg.
and Const. Trades Council, AFL CIO v. U.S. Dept. of Labor, 359
F.3d 14, 18-19 (1st Cir. 2004) (same; quoting Hatch, 274 F.3d at
19).  Futility is gauged under a Rule 12(b)(6) standard.  See
Hatch, 274 F.3d at 19.

First, defendants argue that the proposed amendment is
futile for insufficient detail and lack of plausibility.  (Docket
Entry # 36, ¶ 1).  Defendants only make a general allegation of
fraud, basing their claim on a separate case involving Allied in
the United State District Court for the Southern District of New
York ("the Allied case").  (Docket Entry # 36, ¶ 1).  Simply
citing to a separate ongoing case fails to sufficiently
articulate fraud on the part of Allied in this proceeding.

Second, defendants cite to Cavadi v. DeYeso, 941 N.E.2d 23
(Mass. 2011), to support the proposition that the original and
the proposed amended claims "sound in equity" and "are all
subject to dismissal for the illegal and inequitable conduct of
Allied leading to the US v Allied fraud case."  (Docket Entry #
36, ¶ 2).  As previously explained, simply citing the Allied case
does not, without more, lead to a finding of illegal or
inequitable conduct sufficient to dismiss the proposed claims.

Moreover, Cavadi does not support a dismissal based in
inequitable conduct.  In Cavadi, the plaintiff brought suit
against a debtor's "romantic partner" under a common law reach
and apply claim and a UFTA claim.  Cavadi v. DeYeso, 941 N.E.2d

at 26.  The court dismissed the UFTA claim prior to trial.  Id.
The court upheld the trial court's judgment that the debtor
retained an interest in the first property "by virtue of his
contribution to its purchase price," and that the romantic
partner held the second property in trust as the debtor's
"straw," "equal to the portion of the purchase price he
provided."  Id. at 26 & 37.  The court reversed the trial court's
judgment on a third property because the fraudulent conveyance
claim is "within the scope of [the] UFTA and is thus the type of
action that is preempted by the statute," noting that the claim
would have likely succeeded had it been brought within the four
year statute of limitations under the UFTA.  Id. at 39 & n.19.
Contrary to defendants' interpretation, the court did not base
its decision on any alleged inequitable conduct by plaintiff.
See Id. at 39-40.  Defendants' second argument is therefore
without merit.

Third, defendants argue that Allied's claim that Belli
transferred equipment and provided uncompensated services to
Diamond is based on pure speculation.  (Docket Entry # 36, ¶ 3).
As stated in the proposed amended complaint, Belli transferred
"various furniture and electronic equipment owned by Allied for
use by Diamond."  (Docket Entry # 32-1, ¶ 25).  As also stated in
the proposed amended complaint, "Allied is the rightful owner of
the equipment Belli supplied to Ms. Mark and/or Diamond."
(Docket Entry # 32-1, ¶ 26).  The proposed amended complaint

further states that, "The furniture and equipment Belli provided to Ms. Mark and/or Diamond Funding is currently being used by Diamond." (Docket Entry # 32-1, ¶ 29). As also stated in the proposed amended complaint, Belli participated in negotiations for the purchase of Diamond by Mark, he "was employed by or otherwise performed valuable services for Diamond" and he "was not compensated and/or was under-compensated for the value of the labor he performed for Diamond." (Docket Entry # 32-1, ¶¶ 20, 32 & 33). Taking the facts in the proposed amended complaint as true, as required, defendants have not met the requisite Rule 12(b)(6) standard to dismiss the proposed claims.

Fourth, defendants assert that the existence of a beneficial interest in Diamond by Belli generally depends on "whether Diamond was purchased with Belli's funds, and if so, whether he intended the purchase to be a gift to Cindy Mark or to retain an interest."[12] (Docket Entry # 36, ¶ 4). Defendants merely provide this legal standard for creating a beneficial interest but fail to identify any facts omitted in the proposed amended complaint that would cause an added claim to fail under their formulation. Defendants then argue that the equipment Belli gave to Diamond was "equipment that Peter Belli had accumulated over the years by virtue of operating several Allied branches" and not the property

---

[12] Defendants' citation to <u>Cavadi</u> is misplaced. The court noted that the trial judge incorrectly "applied analysis that focused on the existence of fraudulent intent that is not an element of a nonstatutory action to reach and apply." <u>Cavadi v. DeYeso</u>, 941 N.E.2d at 31.

of Allied.  (Docket Entry # 36, ¶ 4).  The proposed amended complaint states that Allied owned the equipment that Belli transferred to Diamond.  (Docket Entry # 32-1, ¶¶ 25-26, 45-47 & 49).  Again, the facts in the proposed amended complaint taken as true, as required under a Rule 12(b)(6) standard, establish that Diamond owned the equipment that Belli transferred.

Fifth, defendants maintain that the new information obtained by Allied in discovery does not add anything "to the issue regarding the source of the money used to buy Diamond or any gift issues between Belli and Mark."  (Docket Entry # 36, ¶ 5).  To the contrary, however, Allied learned during discovery that Belli cosigned the promissory note to purchase Diamond (Docket Entry # 32-1, ¶ 21) and that Belli had in fact transferred office equipment that had once been owned by Allied to Diamond (Docket Entry # 32-1, ¶ 25).

Defendants also allege that Allied stole Belli's funds in August 2007, making him insolvent prior to the purchase of Diamond.  (Docket Entry # 36, ¶ 5).  The proposed amended complaint however states that Belli provided funds to Mark "to purchase Diamond Funding with the knowledge that such payment would cause him to become insolvent or otherwise unable to pay any judgment obtained by Allied against him."  (Docket Entry # 32-1, ¶ 43).  Again, taking the facts as opposed to legal conclusions in the proposed amended complaint as true, defendants fail to establish futility under Rule 15.

Defendants' final argument maintains that the original complaint was a reach and apply claim and the addition of the proposed amendment would prejudice defendants. (Docket Entry # 36, ¶ 6). Allied did not have a reach an apply claim in the original complaint[13] and only now seeks to add a statutory and a common law reach and apply claim in the amended complaint. (Docket Entry # 32-1, ¶¶ 18-38). Defendants' claim of prejudice lacks merit because they conceded that they interpreted the original complaint as a reach and apply claim. (Docket Entry # 36, ¶ 6). Defendants further assert that the added claims were brought in bad faith but the record fails to support their conclusion.

CONCLUSION

Accordingly, the motion to amend (Docket Entry # 32) is **ALLOWED**. This court **RECOMMENDS**[14] that the motion to dismiss (Docket Entry # 4) be **ALLOWED** and that the motion for default judgment (Docket Entry # 23) be **DENIED**.


                 /s/ Marianne B. Bowler
                 **MARRIANNE B. BOWLER**
                 United States Magistrate Judge

---

[13] The original one count complaint only contained a claim for the "enforcement of judgment" and sought an attachment by trustee process in connection with this claim. (Docket Entry # 1).

[14] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order. See Rule 72, Fed. R. Civ. P.