UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


AMERICUS MORTGAGE CORPORATION
F/K/A ALLIED HOME MORTGAGE
CAPITAL CORPORATION
          Plaintiff,

          v.                              CIVIL ACTION NO.
                                          12-10158-GAO

IRENE MARK AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF PETER BELLI, DECEASED,
          Defendant,

          and

DIAMOND FUNDING CORPORATION
          Trustee Process
          Defendant.


MEMORANDUM AND ORDER RE:
PLAINTIFF'S MOTION TO CONSOLIDATE, EXTEND TIME FOR SERVICE,
SUBSTITUTE PARTY AND CHANGE CASE CAPTION (DOCKET ENTRY # 57)[1]


REPORT AND RECOMMENDATION RE:
PLAINTIFF'S MOTION TO STRIKE AND DISMISS DEFENDANTS' FIRST
AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT (DOCKET ENTRY #
60); DEFENDANTS' AMENDED MOTION TO DISMISS PLAINTIFF'S COMPLAINT
WITH PREJUDICE (DOCKET ENTRY # 65)

June 17, 2013


BOWLER, U.S.M.J.

---

[1]    "[A] motion to consolidate cases is susceptible to direct
decision be a magistrate judge pursuant to 28 U.S.C. §
636(b)(1)(A)."  Ledalite Architectural Products v. Focal Point,
L.L.C., 2008 WL 4964733, *1 (W.D.Wis. Nov. 14, 2008).

Pending before this court is an amended motion by defendants Peter Belli ("Belli") and trustee process defendant Diamond Funding Corporation ("Diamond") (collectively: "defendants") to dismiss an amended complaint (Docket Entry # 43) filed by plaintiff Allied Home Mortgage Capital Corporation ("Allied" or "plaintiff"). (Docket Entry # 65). In addition, Allied filed a motion to strike and dismiss defendants' amended counterclaim and third party complaint (Docket Entry # 60) and a motion to consolidate, extend the time for service, substitute a party and change the case caption. (Docket Entry # 57). On October 18, 2012, this court conducted a hearing and took the motions (Docket Entry ## 57 & 60 & 65) under advisement.

BACKGROUND

Plaintiff filed an amended complaint against defendants on July 31, 2012, to collect a final judgment issued by the court in Allied Home Mortg. Capital Corp. v. Peter Belli and Regency Serv. Comp., Inc., Civil Action No. 07-11597-NG ("the Allied court" or "the Allied case"), on March 8, 2011. (Docket Entry # 43, ¶ 6). Count One of the amended complaint seeks to enforce the final judgment against both Belli and Diamond. The final judgment in the Allied case against Belli awards Allied $2,394,857.20 with interest at 12% per annum and costs of $10,928.49. (Docket Entry # 43, ¶ 6). More specifically, the final judgment against Belli awards Allied $75,000.00 for the

2

conversion of property and equipment claim.  (Docket Entry #
324) (Allied case).  The final judgment awards the remaining
damages against Belli for the claims of unjust enrichment,
replevin, intentional misrepresentation, fraud, negligent
misrepresentation and breach of the duty of loyalty.  (Docket
Entry # 324) (Allied case).  Counts two through four of the
amended complaint are a common law reach and apply claim against
Diamond, a statutory reach and apply claim against Diamond and a
Uniform Fraudulent Transfer Act ("UFTA") claim against Diamond.
(Docket Entry # 43).  The amended complaint identifies Belli as
the chief executive officer ("CEO") of Diamond.  (Docket Entry #
43, ¶ 4).

On December 9, 2011, the Allied court issued a writ of
execution to enforce the final judgment.  (Docket Entry # 43, ¶
7).  A deputy sheriff made demand upon Diamond on December 14,
2011.  (Docket Entry # 43, ¶ 7).  Diamond did not comply with
the writ[2] and in a response dated December 23, 2011, Belli stated
there was an Internal Revenue Service ("IRS") lien with priority
over the judgment.  (Docket Entry # 43, ¶¶ 8-9).  On August 12,
2008, the IRS issued a Notice of Levy to Belli for $505,430.27.
(Docket Entry # 43, ¶ 9).  On March 18, 2011, the IRS

---

[2]   Defendants' answer disputes this statement.  (Docket Entry #
45, ¶ 7).

temporarily closed the case.[3]   (Docket Entry # 43, ¶ 9).   Belli

has not paid plaintiff any funds in connection with the 2011

final judgment.   (Docket Entry # 43, ¶ 13).   On July 5, 2012,

the First Circuit affirmed the final judgment entered by the

Allied court.

On August 9, 2012, defendants filed the answer to the

amended complaint and a two count counterclaim against Allied

and "third party complaint" against Jim Hodge ("Hodge"),

Allied's chief executive officer.   (Docket Entry # 45).   On

September 5, 2012, Allied responded to the counterclaim and

third party complaint with a motion to strike and dismiss the

counterclaim and third party complaint.   (Docket Entry # 52).

On September 9, 2012, defendants filed an amended counterclaim

and third party complaint against the same parties, i.e., Allied

and Hodge.   (Docket Entry # 55).   Count One of the amended

counterclaim and third party complaint is for abuse of process

against Allied and Hodge.   (Docket Entry # 55, ¶¶ 14-19).   Count

Two raises a violation of section 11 of Massachusetts General

Laws chapter 93(a) ("chapter 93A") against Allied and Hodge.

(Docket Entry # 55).   On the same day, defendants filed a

response to Allied's motion to strike and dismiss.   (Docket

Entry # 56).

---

[3]   Defendants' answer states that the IRS "determined that Belli
has no assets" and therefore "ceased active collection."
(Docket Entry # 45, ¶ 9).

On September 13, 2012, Allied filed the motion to consolidate this case with Americus Mortgage Corporation f/k/a Allied Home Mortgage Capital Corporation v. The Estate of Peter Belli and Irene Mark, Civil Action No. 12-10861-GAO ("the Americus case"), a case Americus Mortgage Corporation, formerly known as Allied Home Mortgage Capital Corporation ("Americus"), filed after Allied filed the case at bar.  The motion also seeks to extend the time to serve the Estate of Belli, to substitute Irene Mark ("Mark") for Belli as personal representative of the Estate of Belli and to correct the case caption.  (Docket Entry # 57).  Americus filed the complaint in the Americus case on May 14, 2012, after Belli's February 2012 death.  Americus served Mark, a reach and apply defendant, with the summons and complaint on May 15, 2012.[4]  (Docket Entry # 65, p. 7).  On June 11, 2012, Americus filed a motion for entry of default against Mark.  (Docket Entry # 5) (Americus Case).  On August 8, 2013, the Clerk issued an entry of default and a Standing Order Regarding Motions for Default Judgment against Mark.  (Docket Entry ## 6 & 7) (Americus Case).  On August 17, 2012, Americus filed a motion for a default judgment against Mark.  (Docket Entry # 8) (Americus Case).  On August 24, 2012, Mark filed an opposition to the motion for a default judgment.  (Docket Entry

---

[4]   Defendants assert that the complaint in the Americus case provides proper notice of death under Rule 25(a)(1), Fed. R. Civ. P.

# 15) (<u>Americus</u> case).  On September 6, 2012, Americus moved to withdraw the motion for default judgment.  (Docket Entry # 16) (<u>Americus</u> Case).  On January 16, 2013, the court allowed the motion to withdraw the motion for a default judgment.

Meanwhile, on September 19, 2012, in this case, defendants filed a response to the motion to consolidate, extend the time for service, substitute a party and correct the case caption. (Docket Entry # 59).  That same day, Allied filed the pending motion to dismiss and strike defendants' amended counterclaim and third party complaint.  (Docket Entry # 60).

On September 21, 2012, defendants filed a motion to dismiss Allied's amended complaint.  (Docket Entry # 62).  On the same day, defendants responded to Allied's motion to strike and dismiss the amended counterclaim and third party complaint. (Docket Entry # 63).  On September 24, 2012, defendants filed the amended motion to dismiss Allied's amended complaint. (Docket Entry # 65).  Allied filed an opposition to the amended motion to dismiss on October 9, 2012.  (Docket Entry # 68). Defendants then filed a reply to Allied's opposition on October 12, 2012.  (Docket Entry # 70).

On October 18, 2012, in open court, counsel for Allied requested to withdraw Allied's initial motion to strike and dismiss (Docket Entry # 52) the first counterclaim and third party complaint as moot.  Counsel for defendants also moved to

6

withdraw their initial motion to dismiss the amended complaint
(Docket Entry # 62) as moot.  This court allowed the withdrawal
of both motions (Docket Entry ## 52 & 62).


I.  <u>MOTION TO DISMISS AMENDED COMPLAINT (DOCKET ENTRY # 65)</u>

Defendants move to dismiss the amended complaint (Docket
Entry # 43) because Allied's motion to substitute Mark, both
individually and as personal representative of the Estate of
Belli, is untimely.  In particular, they submit that the motion
to substitute Mark was filed outside the 90 day limit in Rule
25(a)(1), Fed. R. Civ. P. ("Rule 25").  (Docket Entry # 65, ¶¶
1-4).  Defendants additionally argue that all claims and damages
exclusive of the $75,000.00 award for conversion did not survive
the death of Belli[5] under section one of Massachusetts General
Laws chapter 228 ("Massachusetts survival statute") and
Massachusetts common law.  (Docket Entry # 65, ¶¶ 5-9).

Defendants, in the amended motion to dismiss the amended
complaint, state that Belli died on February 20, 2012.  (Docket
Entry # 65, p. 2).  Defendants also represent that Allied was
informed of Belli's death within weeks.  (Docket Entry # 65, p.
7).  Furthermore, defendants submit an affidavit by counsel for

---

[5]  Such claims and damages awards relate to the remaining claims
for unjust enrichment, replevin, intentional misrepresentation,
fraud, negligent misrepresentation and breach of duty of loyalty
claims.

defendants swearing that counsel for Allied was informed verbally by defense counsel on May 29, 2012, that Belli died on February 20, 2012, and that the statement was made in open court and on the record.  (Docket Entry # 65-1).

DISCUSSION

A.  Rule 25

Defendants first argue that Allied failed to raise a timely motion pursuant to Rule 25.  (Docket Entry # 65, ¶¶ 1-4). Allied argues in response that the 90 day time limit under Rule 25 did not commence because defendants did not properly serve a statement of Belli's death upon Allied and that a verbal statement on the record in court, without more, is insufficient to commence the 90 day time limit.  (Docket Entry # 68, pp. 4-5).

Defendants' argument is twofold.  First, pointing to counsel's aforementioned affidavit, defendants argue that a suggestion of death was properly served on Allied orally in open court and on the record on May 29, 2012.  (Docket Entry # 65, p. 2).  Accordingly, the 90 day time limit began on May 29, 2012, the date of the oral announcement in court, and expired 90 days later on August 29, 2012.  (Docket Entry # 65, p. 2). Defendants conclude therefore that Allied's motion to substitute (Docket Entry # 57) was untimely because it was filed on

September 13, 2012, 15 days after the 90 day time limit expired.
(Docket Entry # 65, pp. 2-3).

Second, defendants maintain that the 90 day time period
began when Allied filed the complaint on May 14, 2012, in the
Americus case.  (Docket Entry # 70, p. 2).  Under this theory,
the 90 day time limit expired on August 18, 2012.  (Docket Entry
# 70, p. 2).  Defendants rely on the statement in the complaint
in the Americus case that reads:

> Mark is the executor of Judgment Debtor's estate and the
> sole trustee of his Pour-Over Trust.  She was also
> designated by him in his Last Will and Testament to be the
> sole beneficiary of tangible property, including his
> household furniture and furnishings, automobiles, boats,
> clothing, and jewelry.  She was also designated by him to
> receive 33 1/3% of the shares in the Pour Over-Trust
> created by the Judgment Debtor.

(Docket Entry # 70, p. 4).

Rule 25 provides that the court may order the substitution
of proper parties if a party dies and that party's claim is not
extinguished.  Fed. R. Civ. P. 25(a)(1).  Furthermore, Rule 25
states, "if the motion is not made within 90 days after service
of a statement noting the death, the action by or against the
decedent must be dismissed."  Fed. R. Civ. P. 25(a)(1).

Citing a majority of circuits, the court in C.R. Stone
found that proper service of a statement noting the death of a
party pursuant to Rule 25(a)(3) requires that the statement be
filed on the record under Rules 4 and 5, Fed. R. Civ. P.  C.R.

Stone Concrete Contractors, Inc., 462 B.R. 6, 18 (Bankr.Mass. 2011).   In addition, the court found that the 90 day time period in Rule 25 does not begin to run until the decedent's representative or successor is properly served with the statement noting the death thereby identifying and notifying the substitutable party.   Id.; see also Atkins v. City of Chicago, 547 F.3d 869, 870-71 (7th Cir. 2008); United States v. Miller Bros. Constr. Co., 505 F.2d 1031, 1034 (10th Cir. 1974) (90 day time limit does not commence until service of statement of death in accordance with Rule 5, Fed. R. Civ. P.); Mandarino v. Mandarino, 257 F.R.D. 394, 395-96 (S.D.N.Y. 2009); Gronowicz v. Leonard, 109 F.R.D. 624, 627 (S.D.N.Y. 1986) (90 day time limit invoked only when suggestion of death identifies representative or successor who may be substituted as a party and served and filed pursuant to Rule 5, Fed. R. Civ. P.); Blair v. Beech Aircraft Corp., 104 F.R.D. 21, 22 (W.D.P.A. 1984) (time for filing Rule 25 motion to substitute commences only after death of party is formally suggested on record by filing and serving written statement of death under Rule 5, Fed R. Civ. P.); 7C C. Wright, A. Miller, M. Kane & R. Marcus, Federal Practice and Procedure § 1955 (2012).

A suggestion of death in open court, without more, does not constitute "service of a statement noting death" pursuant to Rule 25.   Instead, service, as contemplated by Rule 25, requires

service of process pursuant to Rules 4 and 5, Fed R. Civ. P.

C.R. Stone Concrete Contractors, Inc., 462 B.R. at 18 ("'[a]

statement noting death must be served in the same manner' as a

motion to substitute"); see also United States v. Miller Bros.

Constr. Co., 505 F.2d at 1034 ("Rule 25 provides that suggestion

of death on the record is made by service of a statement of the

fact of the death on the parties as provided in Rule 5, Fed. R.

Civ. P.).  Because service was not made pursuant to Rule 4 or

Rule 5, Fed R. Civ. P., due to the fact that an oral statement

made in open court does not satisfy Rules 4 or 5, Fed R. Civ.

P., the 90 day time period did not commence on May 29, 2012.

Furthermore, in addition to the requirement that a

suggestion of death be filed according to Rules 4 and 5, Fed R.

Civ. P., the suggestion of death must identify and serve the

representative or successor who may be substituted as a party.

Atkins v. City of Chicago, 547 F.3d at 870-71; Blair v. Beech

Aircraft Corp., 104 F.R.D. at 21.  Accordingly, defendants'

first argument relying on the *oral* statements in open court that

did not include the *representative* or *successor* is without

merit.

Likewise, defendants' second argument relying on the

statement in the complaint in the Americus case is misplaced.

While the statement does mention Mark and her capacity in

relation to Belli's estate as executor, the statement does not

11

name a representative or successor to Belli.  Therefore, the 90
day period did not commence on May 14, 2012.

## B.   Massachusetts Survival Statute

Defendants next argue that the claims and damages awarded
by the Allied court in the final judgment, exclusive of the
$75,000.00 award, did not survive Belli's death and are
therefore subject to dismissal under the Massachusetts survival
statute and common law.  (Docket Entry # 65, ¶¶ 5-9).  Turning
to the merits, defendants' argument to dismiss the damages and
the claims under the common law raises the doctrine of
abatement.  Abatement is a common law doctrine which causes the
termination of a suit, the equivalent to a dismissal, because
the defendant pleads a matter that defeats the action,
temporarily or permanently.  1 Alan J. Jacobs, Am. Jur. 2d
Abatement, Survival, and Revival § 1 (2013).  As explained by
the First Circuit, "[A] cause of action ceases to exist on being
merged in a judgment or decree, and so long as the judgment or
decree remains in force the doctrine of abatement is without
application."  F.A. Mfg. Co. v. Hayden & Clemons, 273 F. 374,
378 (1st Cir. 1921).  Put another way:

> [A]n action generally is not abated by the death of a party
> after the cause has reached a verdict or final judgment and
> while the judgment stands even where the judgment is based
> on a cause of action that would not have survived had the
> party died before judgment.

1 Alan J. Jacobs, <u>Am. Jur. 2d Abatement, Survival, and Revival</u> §
58 (2013); <u>see</u> <u>also</u> <u>Howard v. Wilbur</u>, 166 F.2d 884, 885 (6th Cir.
1948) (finding cause of action in favor of plaintiff cannot be
abated because it merged into a judgment, even though it would
have not survived if death had occurred prior to the judgment);
<u>Chopra v. General Elec. Co.</u>, 527 F.Supp.2d 230, 239 (D.Conn.
2007) (finding plaintiff's death after entry of judgment does
not impact survival of his claims); <u>see</u>, <u>e.g.</u>, <u>Brundrett v.</u>
<u>Hargrove</u>, 161 S.W.2d 762 (Ark. 1942).  The common law doctrine
of abatement, therefore, does not apply where, as here, there
was a final judgment prior to Belli's death.

Turning to the Massachusetts survival statute, Allied first
submits that Rule 12(b), Fed. R. Civ. P. ("Rule 12(b)"), estops
defendants from raising the statute because defendants did not
raise it in their August 9, 2012 answer (Docket Entry # 45).
(Docket Entry # 68, p. 3).  Allied points out that defendants
filed the amended motion to dismiss raising the defense on
September 24, 2012, 33 days after Allied served defendants with
the amended complaint (Docket Entry # 50).  (Docket Entry # 68,
p. 3).  Because the Massachusetts survival statute argument
fails on the merits, it is not necessary to address whether, as
a defense, it is barred under Rule 12(b).

Defendants argue that only the conversion claim for
$75,000.00 and the return of property survive the death of

Belli.  (Docket Entry # 65, pp. 10-12).  Defendants seek to dismiss all other damages assessed against them in enforcing the underlying final judgment in the Allied case.  (Docket Entry # 65, pp. 10-12).  Defendants rely on the Massachusetts survival statute and C.R. Stone Contractors to argue that claims based on fraud, misrepresentation and other torts not directly involving damage to real or personal property are extinguished upon death.  (Docket Entry # 65, pp. 10-12).  The Massachusetts survival statute states in relevant part:

> In addition to the actions which survive by the common law, the following shall survive:
>
> (1) Actions under chapter two hundred and forty-seven;
>
> (2) Actions of tort (a) for assault, battery, imprisonment or other damage to the person; (b) for consequential damages arising out of injury to the person and consisting of expenses incurred by a husband, wife, parent or guardian for medical, nursing, hospital or surgical services in connection with or on account of such injury; (c) for goods taken or carried away or converted; or (d) for damage to real or personal property; and
>
> (3) Actions against sheriffs for the misconduct or negligence of themselves or their deputies.

Mass. Gen. L. ch. 228, § 1.  The C.R. Stone Contractors court explains that, "Being out of pocket as a result of a tort, by itself, is not 'damage to . . . personal property' under [Massachusetts's] Survivorship Statute; instead, a specific property right must be damaged."  In re C.R. Stone Concrete Contractors, Inc., 462 B.R. at 22.

Under the Massachusetts survival statute, "a cause of
action survives if it falls within the list of torts enumerated"
in the statute "or if it is 'deemed an action that survives "by
the common law."'" Kraft Power Corp. v. Merrill, 981 N.E.2d
671, 679 (Mass. 2013).  In other words, if a cause of action is
not enumerated in the list, it will survive if it "'survives by
common law.'"  Id. (quoting Rendek v. Sheriff of Bristol County,
797 N.E.2d 891, 892 (Mass. 2003), in parenthetical).  At common
law and apart from a statute, "upon the death of a sole party
plaintiff or the assignment of his entire interest in the
subject matter of a suit, the cause of action abated; that is,
it ceased to exist."  F.A. Manufacturing Co. v. Hayden &
Clemons, 273 F. at 374.

Where, as here, the death occurs after entry of the final
judgment, abatement by statute or common law of the cause of
action does not apply because the cause of action already merged
into the final judgment or decree.  See Id. at 378 ("cause of
action ceases to exist on being merged in a judgment or decree"
and "doctrine of abatement is without application").  Similarly,
under Massachusetts law, if, prior to the death of a plaintiff,
a case is "fully heard and a report of facts, rulings, and an
order for decree has been made, a decree nunc pro tunc may be
entered" even for a cause of action precluded under the
Massachusetts survival statute.  Harby v. Prince, 246 N.E.2d

422, 424 (Mass. 1969) (affirming lower court's judgment in favor of plaintiff in counterclaim for slander or defamation when plaintiff in counterclaim died before entry of final decree); see also Rosenblum v. Ginis, 9 N.E.2d 525, 528 (Mass. 1937) (rejecting defendants' argument that Massachusetts survival statute bars survival of malicious prosecution action when plaintiff died after trial court's finding in plaintiff's favor and after oral argument on appeal).  Defendants' argument that the Massachusetts survival statute bars all of the claims except for the $75,000.00 conversion claim because of Belli's death after the March 8, 2011 final judgment is therefore misplaced.

In sum, neither the Massachusetts survival statute nor common law require or support the dismissal.  Accordingly, it is not necessary to address Allied's alternative argument for dismissal based on relitigating the claims in this case.


II.  MOTION TO STRIKE AND DISMISS FIRST AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT (DOCKET ENTRY # 60)

Allied seeks to dismiss defendants' amended counterclaim and third party complaint pursuant to Rules 14(a)(4), 12(b)(1) and 12(b)(6), Fed R. Civ. P.  Count One of the amended counterclaim and third party complaint is for abuse of process. (Docket Entry # 55, ¶¶ 14-19).  Count Two of the amended

counterclaim and third party complaint sets out a violation of

section 11 of chapter 93(a).  (Docket Entry # 55, ¶¶ 20-35).

<u>STANDARD OF REVIEW</u>

The standard of review for a Rule 12(b)(6) motion is well

established.  To survive a Rule 12(b)(6) motion to dismiss, the

amended counterclaim must include factual allegations that when

taken as true demonstrate a plausible claim to relief even if

actual proof of the facts is improbable.  <u>Bell Atlantic v.</u>

<u>Twombly</u>, 550 U.S. 544, 555-558 (2007).  Thus, while "not

equivalent to a probability requirement, the plausibility

standard asks for more than a sheer possibility that a defendant

has acted unlawfully."  <u>Boroian v. Mueller</u>, 616 F.3d 60, 65 (1st

Cir. 2010) (internal quotation marks omitted).  "[W]here the

well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint . . . has not

shown that the pleader is entitled to relief."  <u>Feliciano-</u>

<u>Hernandez v. Pereira-Castillo</u>, 663 F.3d 527, 533 (1st Cir. 2011)

(internal quotation marks and citations omitted).  Discarding

legal conclusions and taking the facts in the amended

counterclaim as "true and read in a plaintiff's favor even if

seemingly incredible," the amended counterclaim "must state a

plausible, but not a merely conceivable, case for relief."

<u>Sepúlveda-Villarini v. Dept. of Educ.</u>, 628 F.3d 25, 29 (1st Cir.

2010).

FACTUAL BACKGROUND

Belli was a former branch manager for Allied.  (Docket
Entry # 55-1, ¶ 16).  In late 2010 and early 2011, Allied
Capital ceased operations and renamed itself "Allied
Corporation" with the same address and ownership structure as
Allied Capital.  (Docket Entry # 55-1, ¶ 19).  In January 2012,
the Allied Corporation changed its name with the Secretary of
State of Texas to "Allquest Home Mortgage Corporation."  (Docket
Entry # 55, ¶ 2); (Docket Entry # 55-1, ¶ 19).  When Allied
changed its name to Allquest Home Mortgage Corporation, all
executive officers were discharged, including Hodge.  (Docket
Entry # 55, ¶ 2).

At all times during Allied's existence, Allied was owned
and operated by Hodge as the sole director on its board of
directors and as its "exclusive executive."  (Docket Entry # 55,
¶ 3).  Allied was thinly capitalized and "failed to observe any
corporate rules, by-laws or applicable standards of corporate
governance for operating a corporation."  (Docket Entry # 55, ¶
3).  Because of this, Allied was in effect a sole
proprietorship.  (Docket Entry # 55, ¶ 3).

In order for Allied to facilitate monetary transactions
with branch managers, Allied allowed the managers to open "Money
Link accounts" from which managers would receive earnings and
commissions.  (Docket Entry # 55, ¶ 4).  Hodge however would

fail to pay out the earned funds into the "Money Link accounts" thereby preventing branch managers from accessing their own money in violation of company policy.  (Docket Entry # 55, ¶ 4). "Hodge engaged in this conduct so that he could terminate the employees on a whim, and at the same time convert their money, leaving them unable to defend themselves from meritless lawsuits against them."  (Docket Entry # 55, ¶ 5).

The amended counterclaim further states that, "Hodge [Allied] engaged in these practices and violated all rules, by-laws and laws concerning valid corporate governance in order to crush his employees and because it made him 'feel like God.'" (Docket Entry # 55, ¶ 6) (bracketed text in original).  Hodge and Allied converted Belli's "1.5 million and [left] him defenseless to claims against him."  (Docket Entry # 55, ¶ 7). When Belli became aware of the business practices of Allied, he filed a claim under the False Claims Act, 31 U.S.C. § 3729, "against Allied as relator."  (Docket Entry # 55, ¶ 8); (Docket Entry # 55-1).

In addition and as stated above, Belli owes the IRS over $500,000, an amount far greater than the entire value of Diamond.  (Docket Entry # 55, ¶ 12).  Defendants submit that Allied would "not recover a penny" and that all of the value of Diamond attributed to Belli would go to satisfying his IRS debt. (Docket Entry # 55, ¶ 12).

19

DISCUSSION

Allied moves to dismiss the third party complaint against
Hodge and the amended counterclaim against Allied based on three
arguments.  The third argument, which seeks a Rule 12(b)(6)
dismissal of the abuse of process and chapter 93A claims based
on a failure to state a claim for relief, is well taken thereby
obviating the need to address the first two arguments.

Count I of the third party complaint and amended
counterclaim sets out an abuse of process claim because of
Allied's use of the legitimate legal process to collect the
judgment in the Americus case "to obtain a collateral advantage
over Diamond and Belli" by "steal[ing] the value of Diamond from
its owner."  (Docket Entry # 55, ¶ 17).  According to
defendants, Allied therefore used a legitimate legal process as
an act of revenge against Belli "for filing the Qui Tam action
in federal court."  (Docket Entry # 55, ¶ 17).  The claim also
alleges that this action to collect the final judgment in the
Allied case "cannot result in the collection of any proceeds" or
money for Allied "because of the IRS lien and levy" of $500,000.
(Docket Entry # 55, ¶ 16).  Moreover, defendants have suffered
and continue to suffer economic damages in the form of lost
opportunities, costs and attorneys' fees, anxiety and emotional
suffering.  (Docket Entry # 55, ¶ 19).

An abuse of process claim has three distinct requirements:
"1) process that was used 2) for an ulterior or illegitimate
purpose 3) resulting in damage." Iantosca v. Benistar Admin
Services, Inc., 738 F.Supp.2d 212, 222 (D.Mass. 2010) (citing
Millennium Equity Holdings, LLC v. Mahlowitz, 925 N.E.2d 513,
522 (Mass. 2010)); see Empire Today, LLC v. National Floors
Direct, Inc., 788 F.Supp.2d 7, 23-24 (D.Mass. 2011).  Allied
submits that the third party complaint and amended counterclaim
are devoid of facts to support the second element.  With respect
to the second element, an abuse of process claim requires the
use of process "'to accomplish some ulterior purpose for which
it was not designed or intended, or which was not the legitimate
purpose of the particular process employed.'" Millennium Equity
Holdings, LLC v. Mahlowitz, 925 N.E.2d at 522.  "Whether a
person has grounds to bring a claim may of course be relevant in
assessing whether he had an ulterior purpose." Id. at 523.  The
ulterior purpose element however "is not satisfied merely by a
showing that a person commenced litigation knowing it was
groundless." Psy-Ed Corp. v. Klein, 947 N.E.2d 520, 534 (Mass.
2011).

On the other hand, filing a groundless suit "is relevant,
because it may tend to show that the process was used for an
ulterior purpose." Id. (internal quotations marks omitted).  An
"ulterior purpose must be to gain some collateral advantage."

21

Id. at 535.  The advantage at issue "must be collateral to the
legitimate purposes of the proceeding."  Id. at 535 n.35.  The
intent to harm the defendant "directly by bringing suit" is not
sufficient because the intent at issue is to gain some other end
indirectly."  Id.  For example, simply "intending to 'cause a
party to expend substantial time and money to defend against the
claim in a suit' does not prove abuse of process."  Empire
Today, LLC v. National Floors Direct, Inc., 788 F.Supp.2d at 23-
24.

Here, Allied is using the legal process for the legitimate
purpose for which it was intended, to wit, collecting the final
judgment entered by the Allied court.  The fact that it is
groundless insofar as Allied cannot collect any proceeds due to
"the IRS lien and levy" is relevant because it may tend to show
that Allied is using the process for an ulterior purpose.  See
Psy-Ed Corp. v. Klein, 947 N.E.2d at 534.  Allied or Hodge's
motive of revenge and desire to harm Belli however is
insufficient because it equates "the ulterior purpose element
with an improper motive."  See Id. (trial judge articulated
incorrect legal standard by "equating the ulterior purpose
element with an improper motive of vexation, harassment, or
annoyance" that applies to malicious prosecution claim).  Hodge
also purportedly terminated Belli's employment to deprive him of
commissions, in particular, to convert "1.5 million and leave

him defenseless to claims" without the "money to pay for an attorney." (Docket Entry # 55, ¶ 7). These past acts which led to the final judgment in the Allied case lack the quality of extorting or coercing another party to obtain a collateral advantage. Moreover, it was not wrongful to obtain a default judgment as a discovery sanction or the final judgment in the designated amount which the First Circuit affirmed. See generally Id. at 534 n.36 (dicta noting that ulterior purpose "has been compared to extortion, in that the defendant has allegedly tried to exact some advantage by wrongful means").

The amended counterclaim and third party complaint also identify the collateral advantage as seeking "revenge against Belli for filing the Qui Tam action in federal court." (Docket Entry # 55, ¶ 17). Defendants attached the complaint Belli filed in United States ex rel. Belli v. Americus Mortg. Corp., Civil Action No. 11-05443(VM) ("Qui Tam action"), in the Southern District of New York, as an exhibit to the amended counterclaim and third party complaint. (Docket Entry # 55-1). Defendants' argument that Allied is seeking revenge through the Qui Tam action is misplaced because the United States filed the Qui Tam action against Allied on February 21, 2012. (Docket Entry # 55-1). Allied filed the case in the Allied court against Belli on August 27, 2007. In addition, Allied filed the complaint in the case at bar on January 30, 2012. (Docket Entry

# 1).  Because the Qui Tam action was filed after both
complaints, revenge for filing the Qui Tam action could not have
been a motive for Allied's filings.  Even if it were, "having an
improper motive of 'vexation, harassment, or annoyance' is
relevant but does not alone suffice to demonstrate ulterior
purpose."  Empire Today, LLC v. National Floors Direct, Inc.,
788 F.Supp.2d at 23.  The abuse of process claim therefore fails
to survive the motion to dismiss given the absence of facts to
set out a plausible ulterior or illegitimate motive.

Allied next moves to dismiss the claim for a violation of
section 11 of chapter 93(a).  The claim alleges that Allied and
Hodge engaged in unfair or deceptive acts during and after
Belli's employment including filing this action.  (Docket Entry
# 55, ¶¶ 20-35).  Allied argues that the claim is deficient
because chapter 93A applies to actions taken in the course of
trade or commerce as opposed to actions taken in the employment
or litigation context.

By its terms, section 11 of chapter 93A applies to "(a)ny
person who engages in the conduct of any trade or commerce."
Lantner v. Carson, 373 N.E.2d 973, 976 (Mass. 1978); accord
First Enterprises, Ltd. v. Cooper, 680 N.E.2d 1163, 1165 (Mass.
1997) (chapter 93A applies only to actions taken in course of
"trade or commerce"); Mass. Gen. L. ch. 93A, § 11.  Sections
2(a) and 11 each contain the phrase "in the conduct of any trade

or commerce" and the phrases are therefore similarly construed. Lantner v. Carson, 373 N.E.2d at 977. To violate section two of chapter 93A, "the acts or practices complained of must be 'perpetrated in a business context.'" Arthur D. Little, Inc. v. East Cambridge Saving Bank, 625 N.E.2d 1383, 1389 (Mass.App.Ct. 1994) (quoting Lantner v. Carson, 373 N.E.2d at 976). Notably, the court in Little allowed summary judgment on a section 11 claim because "[n]o commercial relationship ever existed between the parties; their only contact occurred in the context of this litigation." Id.; see First Enterprises, Ltd. v. Cooper, 680 N.E.2d at 1165 (quoting Little, 625 N.E.2d at 1389). "The mere filing of litigation does not of itself constitute 'trade or commerce.'" First Enterprises, Ltd. v. Cooper, 680 N.E.2d at 1165 (quoting Little, 625 N.E.2d at 1383). Likewise, neither resisting "a just [legal] claim" nor breaching "a legal obligation under commercial law" rises to the level of an unfair or deceptive act under chapter 93A. Framingham Auto v. Workers' Credit Union, 671 N.E.2d 963, 965 (Mass.App.Ct. 1996). In addition, chapter 93A "has never been read so broadly as to establish an independent remedy for unfair or deceptive dealings in the context of litigation, with the statutory exception as to those engaged in the business of insurance." Morrison v. Toys "R" Us, Inc., 806 N.E.2d 388, 392-93 (Mass. 2004).

Similarly, it is also "well established that disputes between parties in the same venture do not fall within the scope [of] G.L. c. 93A, § 11." First Enterprises, Ltd. v. Cooper, 680 N.E.2d at 1165 (quoting Szalla v. Locke, 657 N.E.2d 1267, 1269 (Mass. 1995)).  Internal disputes within a business do not constitute "a commercial marketplace transaction" and therefore fall outside the scope of section 11 liability.  First Enterprises, Ltd. v. Cooper, 680 N.E.2d at 1166.  The Massachusetts "Legislature did not intend [section 11] to cover employment contract disputes between employers and the employees who work in the employer's organization, nor to disputes between members of that organization arising out of the employment relationship." Manning v. Zuckerman, 444 N.E.2d 1262, 1265 (Mass. 1983); see also Zimmerman v. Bogoff, 524 N.E.2d 849, 856 (Mass. 1988) (chapter 93A does not apply to disputes between parties to joint venture).

The facts in the amended counterclaim and the third party complaint reveal an employment or internal business dispute that led to litigation and culminated in a final judgment. Thereafter, Allied filed this action to enforce and collect that judgment.  The parties' relationship began in the employment context and progressed to litigation.  Defendants' argument that Diamond was not an employee of Allied and that chapter 93A liability extends to post employment conduct, see Guest-Tek

26

Interactive Entertainment, Inc. v. Pullen, 665 F.Supp.2d 42, 46

(D.Mass. 2009), does not salvage the claim.


III.  MOTION TO CONSOLIDATE, EXTEND TIME FOR SERVICE, SUBSTITUTE
PARTY AND CHANGE CASE CAPTION (DOCKET ENTRY # 57)

     Allied, in one filing, first moves to consolidate this

action with the later filed Americus case pursuant to Rule

42(a), Fed. R. Civ. P. ("Rule 42(a)").  (Docket Entry # 57).

Second, Allied moves to substitute Mark as the personal

representative of the Estate of Belli as a defendant in place of

Belli in the consolidated action pursuant to Rule 25.  Third,

Allied moves for an extension of time to serve the Estate of

Belli with the amended complaint filed in this action.  Fourth,

Allied moves to change the case caption in this action to

reflect the substitution.  (Docket Entry # 57, p. 2).

A.  Rule 42(a) Consolidation

     Briefly elucidating the nature of the two proceedings

Allied seeks to consolidate, in this action Allied initially

filed a one count complaint seeking to enforce the final

judgment of the Allied court against Belli and Diamond.  (Docket

Entry # 1).  Having learned new information through discovery,

Allied filed a motion to amend the complaint to add statutory

and common law reach and apply claims and a UFTA claim against

Diamond.  (Docket Entry # 32).  This court allowed Allied's

motion to amend (Docket Entry # 42) and Allied filed the amended
complaint (Docket Entry # 43) on July 31, 2012.

On May 14, 2012, Americus filed the Americus case.  The
four count complaint in the Americus case sets out the same
claims as the amended complaint in the present case, namely, to
enforce the Allied court's judgment, statutory and common law
reach and apply claims and UFTA claims against the Estate of
Belli and Mark.

Discovery in each case is ongoing.  Discovery is set to
close in this case 60 days after the date of this ruling.  As
stated in the clerk's notes for the March 18, 2013 proceeding in
the Americus case, this court will set a discovery deadline
"once pending motions are ruled on." (Docket Entry # 35)
(Americus case).

Allied seeks to consolidate this action with the later
filed Americus case.  Allied argues that consolidation is proper
because all parties in both cases are the same.  (Docket Entry #
57).  Allied further maintains that both cases arise directly
from Allied's efforts to collect the final judgment.  (Docket
Entry # 57, ¶ 5).  In addition, counsel for Allied submitted a
declaration stating that she was not aware that Allied changed
its business name to Americus.  (Docket Entry # 58).

In opposing consolidation, Diamond and Belli submit that
Allied's counsel was aware of the name change.  (Docket Entry #

59).  Diamond and Belli also argue that Allied filed the
Americus case in order to obtain a default judgment "secretly
and in bad faith."  (Docket Entry # 59).  Furthermore, Diamond
and Belli contend that the "cases are not properly filed in the
first place" and the proper procedure is to amend the amended
complaint to reflect the name change from Allied to Americus and
add the Estate of Belli and Mark as defendants.  (Docket Entry #
59).

## DISCUSSION

"The threshold issue" in determining whether to consolidate
cases under Rule 42(a) "is whether the two proceedings involve a
common party and common issues of fact or law."  Seguro De
Servicio De Salud De Puerto Rico v. McAuto Systems Group, Inc.,
878 F.2d 5, 8 (1st Cir. 1989); see Vazquez Rivera v. Congar
Intern. Corp., 241 F.R.D. 94, 95 (D.P.R. 2007).  "Once this
determination is made, the trial court has broad discretion in
weighing the costs and benefits of consolidation to decide
whether that procedure is appropriate."  Seguro De Servicio De
Salud De Puerto Rico v. McAuto Systems Group, Inc., 878 F.2d at
8; see Cruickshank v. Clean Seas Co., 402 F.Supp.2d 328, 340-41
(D.Mass. 2005) (quoting Seguro).  In considering the costs and
benefits of consolidation, it is appropriate to consider and
weigh the convenience or inconvenience to the parties, the
judicial economy, the savings in time, effort or expense and

29

"any confusion, delay or prejudice that might result from consolidation." Data General Corporation v. Grumman Systems Support Corporation, 834 F.Supp. 477, 487 (D.Mass. 1992); Tower of Cranes of America v. Public Service Company of New Hampshire, 702 F.Supp. 371, 376 (D.N.H. 1988) (court weighs "savings of time and effort that consolidation would produce against any inconvenience, delay or expense that would be caused to the parties and to the Court"); see Vazquez Rivera v. Congar Intern. Corp., 241 F.R.D. 94, 95 (D.P.R. 2007).  Absent "demonstrable prejudice," consolidation is generally allowed.  Seguro De Servicio De Salud De Puerto Rico v. McAuto Systems Group, Inc., 878 F.2d at 8; accord Gilliam v. Fidelity Management and Research Co., 2005 WL 1288105, *1 (D.Mass. May 3, 2005) (quoting Seguro); Town of Norfolk v. United States Environmental Protection Agency, 134 F.R.D. 20, 21 (D.Mass. 1991) (quoting Seguro).

Turning to the threshold issue, the case at bar and the Americus case have the common party of Americus, formerly known as Allied.  They also share common issues of fact and law.  Both actions seek to enforce the same final judgment entered in the Allied case.  Each action also includes the same legal claims. Indeed, the operative complaints in each case set out the same four causes of action, i.e., enforcement of the final judgment, common law and statutory reach and apply claims and UFTA claims.

The two actions therefore contain common legal issues.  Having satisfied the threshold issue, this court turns to weigh the costs and benefits of consolidation.

Belli and Diamond argue that Allied filed the Americus case to obtain a default judgment in a surreptitious manner.  (Docket Entry # 59).  Therefore, defendants argue that "consolidating two cases that are not properly filed in the first place is not appropriate.  Amending the original complaint to reflect the name change and the desire to add additional defendants is the proper procedure."  (Docket Entry # 59).  Defendants do not cite any case law to support the argument.  See LR. 7.1(b)(1).  With Allied having provided a proper basis for consolidation, it is not the province of this court to require Allied to file a motion to amend the amended complaint in lieu of a motion to consolidate.

Here, the costs and benefits favor consolidation.  Mark and the Estate of Belli have the same counsel thus lessening any delay or confusion because counsel is familiar with both proceedings.  Judicial economy in proceeding in a single action is well served because consolidation avoids conducting duplicate hearings and duplicate discovery.  Sufficient prejudice to avoid consolidation is absent.  Consolidation is therefore warranted.

B.  Substitution

Allied next seeks "to substitute Irene Mark as the personal representative of the Estate of Belli . . . as a Defendant [in place of Belli] in this Action and [the] Consolidated Action pursuant to Rule 25(a)(1)." (Docket Entry # 57). Defendants argue that the motion to substitute is not timely and that Allied fails to show that the action survives Belli's death. (Docket Entry # 59, ¶¶ 10 & 15).

Belli died on February 20, 2012. Mark was Belli's common law spouse in Massachusetts and is the executor of his estate. (Docket Entry # 57) (Docket Entry # 58-1, Ex. C) (Docket Entry # 59, pp. 7-8). The parties agree that Mark, in her capacity as representative of the Estate of Belli, is the proper party to substitute for Belli. (Docket Entry # 57, ¶ 15) (Docket Entry # 59, ¶ 15).

"If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative." Fed. R. Civ. P. 25(a)(1). In addition, the proper parties for substitution are the "successors or representatives of the deceased party." Rende v. Kay, 415 F.2d 983, 985 (D.C.Cir. 1969).

Turning to defendants' argument and as previously explained, the motion to substitute is timely. The 90 day time limit has not commenced due to inadequate notice of Belli's

death by defendants.  As also previously stated, the final judgment in the <u>Allied</u> case survives Belli's death.

Allied's motion seeks to substitute Mark, as personal representative of the Estate of Belli, as a defendant in this action in lieu of Belli.  As the executor of the estate, she is the proper party in her capacity as representative of the estate.  See <u>Rende v. Kay</u>, 415 F.2d at 985 (finding that successors or representatives of the estate are proper substitutions for deceased parties).  Mark, as personal representative of the Estate of Belli, is therefore substituted as a defendant in lieu of Belli in this action.

Allied additionally seeks to substitute Mark for Belli in the same capacity "as a Defendant in . . . [the] Consolidated action."  (Docket Entry # 57).  "[A]lthough two cases may be consolidated for purposes of convenience and judicial economy, they retain their separate identities." <u>General Contracting & Trading Co., LLC v. Interpole, Inc.</u>, 940 F.2d 20, 24 (1st Cir. 1991).  Here, there is no consolidated amended complaint in which to substitute Irene Mark for Belli.  As noted above, Mark is substituted for Belli in this action and is a reach and apply defendant in the <u>Americus</u> case.  Accordingly, the complaint in the <u>Americus</u> case and the first amended complaint in this action with Mark, as personal representative of the Estate of Belli,

substituted in lieu of Belli, are retained in the consolidated action.

As a practical matter, a number of the claims in each action overlap and duplicate each other.  The parties are therefore directed but not required to confer and attempt to reach a joint stipulation to dismiss any duplicate claim or, in the alternative, to file a joint motion for leave to file a consolidated second amended complaint setting out all of the claims.  See generally James Wm. Moore Moore's Federal Practice § 42.13[5](a) (2012) (noting that "court has power to order the parties to file a single, consolidated complaint"); see, e.g., Katz v. Realty Equities Corp., 521 F.2d 1354, 1358 (2nd Cir. 1975).

C.   Extension of Time

Allied next seeks an extension of time to effectuate service on the Estate of Belli in the case at bar.  In particular, Allied requests 120 days from the time "the Estate opens for probate, or 120 days from the time a representative is named as a substitute for" Belli, "whichever is sooner." (Docket Entry # 57, ¶ 20).  Allied seeks the extension because of inconsistent statements made by Belli and Diamond about the probate proceedings and the existence of an estate.  (Docket Entry # 57, ¶¶ 17-19).

On October 19, 2012, counsel for Belli and Diamond filed a memorandum representing that the Estate of Belli was "opened for probate" on September 21, 2012, in Worcester County Probate Court.  (Docket Entry # 71).  The motion therefore seeks an extension of time to 120 days after September 21, 2012, i.e., January 19, 2013.  At this point, the motion is therefore moot. In the event Allied files another motion to extend the time to serve the Estate of Belli, it should address Rule 4(m), Fed. R. Civ. P.

D.   Change of Case Caption

As a final matter, Allied moves:  (1) to change the case caption to reflect the substitution of Mark, as personal representative of the Estate of Belli, in lieu of the deceased Belli; (2) to change the name of Allied to Americus Mortgage Corporation f/k/a Allied Home Mortgage Capital Corporation; and (3) to "correctly identify the current parties to this Action and the Consolidated Action."  (Docket Entry # 57, ¶ 24).  As to the first request, revised caption of the consolidated action will reflect the substitution in *this* action of Mark, as personal representative of the Estate of Belli, in lieu of Belli.  The revised caption of the consolidated action will also accurately reflect the rulings made in this opinion and the correct parties in each action.  The second request to change the name of Allied in this action to Americus in the caption is

35

improper.  Allied does not cite any legal authority to change
its name in the caption.  See LR. 7.1(b)(1).  It also did not
file a motion to amend or substitute Americus for Allied as the
proper plaintiff in this action.  In the event Allied wishes to
change its name, it should file the proper motion with
supporting legal authority.

CONCLUSION

In accordance with the foregoing discussion, this court
**RECOMMENDS**[6] that defendants' motion to dismiss (Docket Entry #
65) be **DENIED** and that Allied's motion to strike and dismiss
defendants' amended counterclaim and third party complaint
(Docket Entry # 60) be **ALLOWED**.  Allied's motion to consolidate,
to extend the time for service, to substitute a party and to
change the case caption (Docket Entry # 57) is **ALLOWED** in part
and **DENIED** in part.  This court will conduct a hearing
to address the motion to strike (Docket Entry # 97) and other
outstanding matters on July 8, 2013, at 2:30 p.m.


                      /s/ Marianne B. Bowler
                      **MARIANNE B. BOWLER**
                      United States Magistrate Judge

---

[6]  Any objections to this Report and Recommendation must be filed
with the Clerk of Court within 14 days of receipt of the Report
and Recommendation to which objection is made and the basis for
such objection.  Any party may respond to another party's
objections within 14 days after service of the objections.
Failure to file objections within the specified time waives the
right to appeal the order.  See Rule 72, Fed. R. Civ. P.