UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICUS MORTGAGE CORPORATION
f/k/a ALLIED HOME MORTGAGE
CAPITAL CORPORATION,
     Plaintiff,

     v.                                    CIVIL ACTION NO.
                                            12-10158-GAO

IRENE MARK, as Personal
Representative of the Estate
of Peter Belli, Deceased,
     Defendant,

     and

DIAMOND FUNDING CORPORATION,
     Trustee Process
     Defendant.

**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF**
**WITHHELD RECORDS FROM DAVID HADLOCK, ESQ.**
**(DOCKET ENTRY # 101)**

**October 16, 2013**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to compel filed by

plaintiff Americus Mortgage Corporation f/k/a Allied Home

Mortgage Capital Corporation ("Allied").   (Docket Entry # 101).

Allied seeks to compel production of documents withheld by

defendant Irene Mark ("Mark"), the personal representative of the

Estate of Peter Belli ("Belli"), and trustee process defendant

Diamond Funding Corporation ("Diamond Funding"), a retail

mortgage corporation, on the basis of the attorney client

privilege.[1]  At a hearing on July 8, 2013, this court instructed
defendants' counsel to file an opposition to the motion within
five days.  In light of the filing of the opposition and the
subsequent submission of the withheld documents for in camera
review, the motion (Docket Entry # 101) is ripe for review.

PROCEDURAL BACKGROUND

As set forth in the second amended complaint, Allied seeks
to collect monies owed under a final judgment issued on March 8,
2011, in <u>Allied Home Mortgage Capital Corporation v. Peter Belli
and Regency Service Company, Inc.</u>, Civil Action No. 07-11597-NG
("the Allied court").  The final judgment awarded Allied Home
Mortgage Capital Corporation $2,394,857.20 with interest at 12%
per annum and costs of $10,928.49.  The First Circuit affirmed
the judgment on appeal.  (Docket Entry # 118-2).  Allied's
attempt to collect the judgment have been unsuccessful.

Count One in this action seeks to enforce the judgment
rendered by the Allied court.  The second amended complaint
alleges that Diamond Funding "possesses property of Belli, the
judgment debtor, specifically wages and his ownership, equitable
and/or benefit [sic] interest in the assets of Diamond Funding."
(Docket Entry # 104-1, ¶ 16).  Count Two sets out a common law
reach and apply claim and Count Three is a statutory reach and

---

[1]  Mark and Diamond Finding are referred to collectively as
"defendants."

2

apply claim.  In Count Four, a claim under the Uniform Fraudulent Transfer Act,[2] Allied contends that Belli provided funds to Mark to purchase Diamond Funding with the knowledge that providing such funds would render him "insolvent or otherwise unable to pay any judgment obtained by Allied against him."  (Docket Entry # 104-1, ¶ 43).  Belli purportedly "retained an equitable, beneficial, and/or ownership interest in the assets of Diamond Funding."  (Docket Entry # 104-1, ¶ 48).

The withheld documents consist of communications from the files of David F. Hadlock, Esq. ("Attorney Hadlock") which plaintiff subpoenaed (Docket Entry # 102-1, Ex. E).  They are relevant to counts two, three and four.  The February 2013 subpoena served on Attorney Hadlock sought:

> All documents constituting, concerning or relating to all communications by and between you and Irene (Cindy) Mark and/or Peter Belli and/or Nick Ruscitti about the sale and purchase of Diamond Funding, including but not limited to notes of any telephone communications, written correspondence or email communications.

> All documents constituting, concerning or relating to all communications by and between you and Peter Belli at any time about any subject, including issues relating to Diamond Funding and your representation of Diamond Funding.

(Docket Entry # 102-1, Ex. E).  The withheld material consists of emails and other documents sent to and from the following individuals:  Belli; Mark; Attorney Hadlock; Gunnar Thorvaldson, Magnus Thorsten and Anne Aberle, all part of a group of

---

[2]  Mass. Gen. L. ch. 109A, §§ 1-12.

individuals that sold or attempted to sell an airplane to Diamond
Funding in May and June of 2011.  In withholding production,
defendants rely on the attorney client privilege based on
Attorney Hadlock's representation.  The parties dispute inter
alia:  (1) whether Attorney Hadlock represented Belli; and (2)
the time period of such representation as occurring prior to
and/or after a 2008 sale of Diamond Funding to Mark.

FACTUAL BACKGROUND[3]

In 2008, Mark purchased Diamond Funding from shareholder Ava
Martinelli ("Martinelli").  Attorney Hadlock represented Mark,
the buyer, during the acquisition.  Sanford J. Resnick, Esq.
("Attorney Resnick") represented the seller, Martinelli, during
the transaction.  The transaction included a stock purchase
agreement, an addendum and a promissory note.

In May 2008, the parties signed a number of documents after
which Mark began running the company for Martinelli during a
transition period.  The transition period ended at the closing of
the sale in October 2008.  Mark paid Martinelli a $20,000 deposit
by wiring the money into her account from Mark's "Metro Home
Mortgage account."  (Docket Entry # 102-1, Ex. A, p. 96).  The
money in Mark's account originated from money she deposited which

_____

[3]  Unless otherwise noted, the facts are taken from the
depositions of Attorney Hadlock and Mark.  (Docket Entry # 121-1,
Ex. A & B).  Citations to the record are provided only for direct
quotations.

included "money from family" and "a personal friend, friends."
(Docket Entry # 102-1, Ex. A).

During this interim or transition period, Attorney Hadlock
represented Mark in connection with her purchase of the company.
The nature of his representation and his role was twofold.
First, he coordinated the October 2008 closing with Attorney
Resnick and participated in negotiations to draft and revise the
stock purchase agreement and the addendum.  He describes this
work as "the business document drafting and revisions and
coordination of the closing in terms of again what I'm describing
as a business side."  (Docket Entry # 102-1, Ex. B).  Second, he
ensured that the transaction complied with licensing and
regulatory requirements imposed by state and federal agencies.
As he describes the latter work, it consisted of organizing the
"data and submissions of filings and coordination of timing and
sequence of those filings in order to achieve the regulatory
approvals that were required to complete the business
transaction."  (Docket Entry # 102-1, Ex. B).  The latter work
was more dominant than the former work.

Throughout this time period and thereafter, Attorney Hadlock
did not represent Belli.  Mark replied, "No" to a deposition
question asking if Attorney Hadlock ever represented Belli.
(Docket Entry # 102-1, Ex. A).  When shown an email from him to
Attorney Resnick confirming Attorney Hadlock's representation of

Mark and Belli during his deposition, Attorney Hadlock
convincingly denied that he ever represented Belli.  In
particular, he explained that he had recently commenced
representation of the buyer at the time of the April 29, 2008
email and mistakenly identified and misunderstood the buyer as
Mark and Belli as opposed to only the former.  Likewise, when
shown an email between Belli and Martinelli in which Belli
denoted Attorney Hadlock as his mortgage attorney, Attorney
Hadlock again denied that he represented Belli.  Elsewhere during
his deposition, Attorney Hadlock testified that he represented
Mark during the transition period from May to October 2008 and
thereafter he represented Diamond Funding.  Under the facts, this
court finds that Attorney Hadlock represented Mark during the
transition period and, after the October 2008 closing,
represented only Diamond Funding.  At no point in time did
Attorney Hadlock represent Belli.

Attorney Hadlock communicated with Belli on numerous
occasions during the transition period.  The two exchanged emails
and spoke on the telephone.  The substance of the communications
included coordinating the closing with respect to aspects of the
stock purchase agreement and the addendum as well as conducting
negotiations with Attorney Resnick about these documents.  Belli
assisted Attorney Hadlock both with the coordination of the
compliance issues and the "business aspects of the acquisition."

(Docket Entry # 102-1, p. 20).  Attorney Hadlock engaged in similar communications with Mark.  He reasonably understood that Mark appointed Belli to interface with him about these matters.

After the closing, Attorney Hadlock represented only Diamond Funding.  He continued to communicate with Mark and with Belli up until Belli's February 2012 death.  With respect to licensing and compliance, Attorney Hadlock primarily interacted with Belli and Jim Slowey, an employee at Diamond Funding.  Belli, who had a telephone line and an email address at Diamond Funding, assisted the company with sales management and hiring.  Mark downplayed Belli's role at Diamond Funding and testified that he did not receive a salary in 2008, 2009 and 2010.  Notably, in a sworn statement, Mark, as "Owner and CEO" of Diamond Funding, attests that Belli was never an employee of Diamond Funding.  (Docket Entry # 51, ¶ 2).  In July 2009, Belli contacted Attorney Hadlock about "HUD violations" on the part of Allied Home Mortgage Capital Corporation.

In 2011, Diamond Funding began paying Belli $3,000 a month.  Mark testified that he became a consultant for the company.  Under the terms of a November 2011 recruiting agreement between Mark, as president of Diamond Funding, and Belli, he received compensation of $3,000 per month for recruiting loan officers and/or branch managers for Diamond Funding.  The recruiting agreement identifies Belli as an independent contractor.  When

7

Mark was ill during the summer of 2011, Belli went to the Diamond Funding office to make "sure everybody was okay" and to check "on everything."  (Docket Entry # 102-1, Ex. A).

Throughout the relevant time period, Attorney Hadlock's practice primarily consisted of representing retail mortgage companies.  He describes himself as "a mortgage banking compliance attorney."  (Docket Entry # 102-1, Ex. B, p. 21).

DISCUSSION

Where, as here, jurisdiction arises under diversity, Massachusetts law determines the scope of the attorney client privilege and any exception to it.  F.D.I.C. v. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000); Fed.R.Evid. 501.  The privilege protects confidential communications made between the client (Mark and thereafter Diamond Funding) and the attorney for the purpose of obtaining legal advice.  See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); McCarthy v. Slade Associates, Inc., 972 N.E.2d 1037, 1045 (Mass. 2012) ("privilege protects communications between a client and an attorney that are made in confidence for the purpose of giving or obtaining legal advice"); Suffolk Const. Co., Inc. v. Division of Capital Asset Management, 870 N.E.2d 33, 37 (Mass. 2007) ("attorney-client privilege shields . . . all confidential communications between a client and its attorney undertaken for the purpose of obtaining legal advice").

The privilege extends only to confidential communications and not to the underlying facts.  See Chambers v. Gold Medal Bakery, Inc., 983 N.E.2d 683, 690-691 (Mass. 2013).  Consequently, it does not immunize underlying facts available from another source just because a client disclosed the facts to an attorney.  See Upjohn Co. v. United States, 449 U.S. at 396; Chambers v. Gold Medal Bakery, Inc., 983 N.E.2d at 690-691.  For example, "basic financial information" of a corporation is not insulated from disclosure "just because" the corporate counsel is keeper of the "corporate records."  Chambers v. Gold Medal Bakery, Inc., 983 N.E.2d at 691.

The attorney client privilege is also "subject to waiver." McCarthy v. Slade Associates, Inc., 972 N.E.2d at 1046.  Ordinarily, the privilege is waived "when otherwise privileged communications are disclosed to a third party." Lluberes v. Uncommon Productions, LLC, 663 F.3d 6, 24 (1st Cir. 2011).  Exceptions to the principle that disclosure to a third party waives the privilege include "the so-called derivative attorney-client privilege."  Commissioner of Revenue v. Comcast Corp., 901 N.E.2d 1185, 1196 (Mass. 2009).  The derivative attorney client privilege shields communications of a third party who is "employed to facilitate communication between the attorney and client and thereby assist the attorney in rendering legal advice to the client."  Id. (citing United States v. Kovel, 296

F.2d 918, 921-922 (2nd Cir. 1961)).  The derivative attorney
client privilege "does not apply unless the communication with
the accountant is made 'for the purpose of [the client] obtaining
legal advice from the lawyer.'"  Id.  As expressed in the Kovel
case involving disclosure in the presence of an accountant, "If
what is sought is not legal advice but only accounting service or
if the advice sought is the accountant's rather than the
lawyer's, no privilege exists."  United States v. Kovel, 296 F.2d
at 922 (citation omitted); accord Commissioner of Revenue v.
Comcast Corp., 901 N.E.2d at 1196 (quoting Kovel, 296 F.2d at
922); Cavallaro v. United States, 284 F.3d 236, 249 (1st Cir.
2002) (quoting Kovel, 296 F.2d at 922).

     As to the privilege in the context of a corporation such as
Diamond Funding, it is well settled that, "'A lawyer employed or
retained by an organization represents the organization acting
through its duly authorized constituents.'"  Clair v. Clair, 982
N.E.2d 32, 41 (Mass. 2013) (quoting Mass. R. Prof. C. 1.13(a), as
"[a] general proposition" with respect to attorney client
privilege).  Confidential communications between the attorney
"and the corporation's employees that are intended to help
counsel to provide the corporation with sound legal advice are
[therefore] protected by the attorney-client privilege."  RFF
Family Partnership, LP v. Burns & Levinson, LLP, 991 N.E.2d 1066,
1071 (Mass. 2013).  Nevertheless, "'an attorney for a corporation

does not simply by virtue of that capacity become the attorney for its officers, directors or shareholders.'" <u>Clair v. Clair</u>, 982 N.E.2d at 41 (quoting <u>Robertson v. Gaston Snow & Ely Bartlett</u>, 536 N.E.2d 344, 348-349 (Mass. 1989)) (internal brackets and ellipses omitted).  Moreover, "the power to assert or waive 'the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors.'" <u>Clair v. Clair</u>, 982 N.E.2d at 41 (quoting <u>Commodity Futures Trading Commission v. Weintraub</u>, 471 U.S. 343, 348 (1985)).

Here, the present record establishes that Belli was never an employee or agent of Diamond Funding.[4]  Absent circumstances to the contrary, Belli, who was not an employee, manager, officer or director of Diamond Funding, generally lacked the ability to assert the privilege on behalf of Diamond Funding.

Finally, the privilege is narrowly construed.  <u>Clair v. Clair</u>, 982 N.E.2d at 40 ("privilege is to be construed narrowly").  The party asserting the "privilege bears the burden of showing that the privilege applies." <u>Vicor Corp. v. Vigilant Ins. Co.</u>, 674 F.3d 1, 17 (1st Cir. 2012).  This includes the burden to show that "(1) the communications were received from a

---

[4]  This court expresses no opinion as to whether in the context of a different record, such as presented in a summary judgment motion, Belli would or would not be an employee of Diamond Funding.

client during the course of the client's search for legal advice from the attorney in his or her capacity as such; (2) the communications were made in confidence; and (3) the privilege as to these communications has not been waived." Clair v. Clair, 982 N.E.2d at 41; Commissioner of Revenue v. Comcast Corp., 901 N.E.2d at 1195. The burden of proving any exception to the privilege falls to the proponent of the exception. Vicor Corp. v. Vigilant Ins. Co., 674 F.3d at 17.

With these principles in mind, this court turns to the documents Allied identifies in exhibit M as subject to production.[5] Attorney Hadlock's communications to and from an individual in the Office of General Counsel of the U.S. Department of Housing and Urban Development ("HUD") (Ex. M, Nos. 17-24), a third party, are not confidential communications. See In re Grand Jury Subpoena (Mr. S.), 662 F.3d 65, 71-72 (1st Cir. 2011) (HUD statements, sales contract(s) and payment records for source of funds "would all have been revealed at the closing and are, therefore, not confidential in nature"); see also Commissioner of Revenue v. Comcast Corp., 901 N.E.2d at 1196 ("communication must be made in confidence--that is, with the expectation that the communication will not be divulged"). Contrary to defendant's position (Docket Entry # 102-1, Ex. I),

---

[5] The numbered documents in exhibit M correspond to the un-numbered documents and dates of the documents submitted for in camera review.

an attorney client relationship between Belli and Attorney

Hadlock was not created "by virtue of this relationship" (Docket

Entry # 102-1, Ex. I).  In addition, Attorney Hadlock's

communications were not made for the purpose of seeking or

rendering legal advice to the client, Diamond Funding.  See In re

Grand Jury Subpoena (Mr. S.), 662 F.3d at 72 ("there is nothing

in the record suggesting that the creation of the documents

involved the giving of legal advice").

Similarly, in May and June 2011, a number of communications

took place between Belli and a group of individuals concerning

the latter's sale of one or two planes to Diamond Funding.  (Ex.

M, Nos. 3-10).  Attorney Hadlock is copied on a number of the

emails.  The subject matter concerns funding, travel, logistics

of the sale and negotiations of the purchase.  The emails do not

involve communications between Diamond Funding and Attorney

Hadlock made in confidence for the purpose of giving or obtaining

legal advice.  They are also not confidential communications made

with the expectation that the communications would not be

divulged.  Finally, the emails are also relevant to the issues in

this case.[6]  Accordingly, they are subject to production.

An email dated April 10, 2010, between Belli and a Diamond

Funding employee is similarly devoid of any legal advice or

_____

[6]  Having considered all of defendants' objections on the
basis of relevance, they are not well taken.

13

confidential communication.  (Ex. M, No. 27).  The communication
relative to a reduction of Attorney Hadlock's fee for a
prospective jumbo loan to a customer does not involve legal
advice by Attorney Hadlock to Diamond Funding.  Belli's
communications with the customer about the prospective loan are
also not privileged.  (Ex. M, Nos. 28-30).

On June 10, 2008, during Attorney Hadlock's representation
of Mark, a member of his staff emailed Mark and Belli.  The
subject matter concerned providing fees to the Massachusetts
Division of Banks and loan originator documents.  (Ex. M, No. 2).
The presence of Belli was not necessary and did not facilitate
communication between Attorney Hadlock and Mark in order to
assist Attorney Hadlock's rendering legal advice to Mark.  See
Commissioner of Revenue v. Comcast Corp., 901 N.E.2d at 1196.
Belli's presence therefore waived the privilege.  Defendants fail
in their burden to show the absence of a waiver with respect to
this email.[7]  See Id. ("[a]s the party asserting the privilege,
Comcast bears the burden of establishing that the attorney-client
privilege applies to the Andersen memoranda").

In September 2008, a Licensing Examiner in the Massachusetts
Division of Banks emailed a letter to Mark requesting certain
documents in connection with Diamond Funding's application for a

---

[7]  Defendants' assertion that "there has been no waiver"
(Docket Entry # 118) is not a sufficient showing.

14

mortgage broker license.  Belli's forwarding the letter to
Attorney Hadlock does not convert the document into a privileged
communication.  See Upjohn Co. v. United States, 449 U.S. at 396
(client "'may not refuse to disclose any relevant fact within his
knowledge merely because he incorporated a statement of such fact
into his communication to his attorney'").  There is no
introductory request seeking legal advice.  Defendants fail to
show that the communication forwarding the letter seeks legal
advice.  It is therefore subject to production.  (Ex. M, No. 46).

An email from Belli to Attorney Hadlock thanking the latter
for baseball tickets is not privileged.  (Ex. M, No. 33).  It is
also not relevant to these proceedings.  As such, it need not be
produced.

An email dated July 17, 2009, from a member of Attorney
Hadlock's staff to Belli to then forwarded to another Diamond
Funding employee requests completion of certain forms to comply
with a state licensing requirement.  (Ex. M, No. 36).  The
communication was neither made in confidence nor for the purpose
of rendering legal advice.  It is therefore subject to
production.

A series of emails on March 14 and July 17, 2009 (Ex. M,
Nos. 37-40),[8] from Belli to Attorney Hadlock lack protection

---

[8]  Defendants incorrectly identify the date of the March 14,
2009 emails (Ex. M, Nos. 39 & 40) as July 14, 2009.

because Belli was not an employee, officer, manager or agent of the corporate client, Diamond Funding.  See Clair v. Clair, 982 N.E.2d at 41 (power to assert "'corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors'").  In addition, one email seeks information about rules under a federal statute to incorporate into company policy and thereafter disclose to Diamond Funding customers.  As such, it is not a confidential communication.  The request for a homestead document to provide a customer, i.e., a third party, is also not a confidential communication seeking legal advice.  Another email forwards a March 16, 2009 email from Belli to Attorney Hadlock attaching a payment schedule for Diamond Funding's payments to Martinelli. (Docket Entry # 123, p. 29).  The transmissions of these business facts without seeking legal advice are not privileged.  See Upjohn Co. v. United States, 449 U.S. at 396.  Accordingly, defendants do not satisfy their burden to show that the attorney client privilege applies to the March 14 and July 17, 2009 emails.  (Ex. M, Nos. 37-40).

The in camera documents also include two February 2009 emails from Belli to Attorney Hadlock regarding a newspaper article about Diamond Funding in a local paper.  The transmission of these public facts is not a confidential communication.  The emails and the attached newspaper article (Docket Entry # 123,

pp. 33-43) are therefore subject to production.

Two November 2, 2008 emails from Belli to a member of Attorney Hadlock's staff with a copy to Attorney Hadlock, Mark and another member of Attorney Hadlock's staff seek information about the status of the approval process of Diamond Fund's licensing and change in control from Martinelli to Mark.  The communications seek facts regarding the status of the application as opposed legal advice.  Hence, they are not subject to the attorney client privilege.  (Ex. M, Nos. 42-43).

Belli's email to Attorney Hadlock on October 22, 2008, however, seeks legal advice on behalf of Mark.  The content demonstrates that the communication was made in confidence. Belli's presence does not destroy the privilege inasmuch as he facilitated the communication between Mark and her attorney and acted as her agent.  The email is not subject to production. (Ex. M, No. 45).

An email dated October 9, 2008,[9] from Belli to himself does not seek legal advice.  Mark, as opposed to Belli, was Attorney Hadlock's client at this point in time.  The document is addressed "Hi Everyone" thus demonstrating that it was not made in confidence.  For these as well as additional reasons, the email is subject to production.  (Ex. M, No. 47).

---

[9]  Defendants incorrectly identify the date as October 8, 2008.  (Ex. M, No. 47).

On September 30, 2008, Martinelli sent an email to Belli complaining about the pace of the transaction. Belli forwarded the email to Attorney Hadlock. Belli did not send a copy of the email to Mark or otherwise indicate that he was acting on her behalf in seeking legal advice from Attorney Hadlock. Defendants fail to satisfy their burden of showing that the privilege applies to the email. The same reasoning applies to August 8 and September 8, 2008 emails[10] from Belli to Attorney Hadlock each forwarding an email from Martinelli complaining about the pace of the change in control. The foregoing emails are therefore subject to production. (Ex. M, Nos. 50, 52 & 54).

An August 19, 2008 email about locating and recruiting loan officers and processors is not a communication made for the purpose of seeking *legal* advice. Accordingly, it is subject to production. (Ex. M, No. 53).

Emails to and from Belli and Attorney Hadlock on July 30, 2008, to schedule a meeting are not made for the purpose of seeking legal advice. A reference in an email sent by Attorney Hadlock about the subject matter of the meeting is not made for the purpose of seeking legal advice and there is no indication that Mark, the client, was copied on any of the emails. Accordingly, the email is subject to production. (Ex. M, No.

---

[10]   Defendants incorrectly identify the date as August 9 as opposed to August 8, 2008.

55).

The July 29, 2008 email about Attorney Hadlock's compensation (Ex. M, No. 56) is not privileged.  See Hanover Ins. Co. v. Rapo & Jepsen Ins. Services, Inc., 870 N.E.2d 1105, 1114 (Mass. 2007) ("'identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege'").  In addition, Attorney Hadlock testified at his deposition about the subject matter of his representation as involving licensing and compliance work.  The similar description of his work in the July 29, 2008 email is therefore not subject to the privilege because it is waived.  The same reasoning applies with respect to the May 5, 2008 email from Attorney Hadlock to Belli regarding the retainer fee agreement as well as the July 15, 2008 email from Belli to Attorney Hadlock asking for the latter's closing fees.  These emails are subject to production.  (Ex. M, Nos. 56, 66 & 72).

The other July 29, 2008 email from Belli, acting on behalf of Mark as her agent, to Attorney Hadlock seeks legal advice about the approval process for a particular kind of license.  It is a confidential communication and not subject to production. (Ex. M, No. 57).

Turning to the July 24, 2008 email, it does not involve the client, Mark, seeking legal advice from Attorney Hadlock. Instead, it concerns an email from Belli about payment for

19

bonding during the transition period.  Defendants do not address the email let alone carry their burden to show that the privilege applies.  The email chain is therefore subject to production. (Ex. M, No. 58).

The first July 21, 2008 email from Belli to Attorney Hadlock and a member of his staff is not privileged.  It attaches a financial statement and does not request legal advice with respect to the financials.  See Upjohn Co. v. United States, 449 U.S. at 396; Chambers v. Gold Medal Bakery, Inc., 983 N.E.2d at 691 (transmission of "basic financial information" is not insulated from disclosure "just because" it is kept by corporate counsel).  Belli also copied the email to a third party and there is no indication that the third party facilitated the communication between Attorney Hadlock and Belli, let alone the client, i.e., Mark.  See Commissioner of Revenue v. Comcast Corp., 901 N.E.2d at 1196; United States v. Kovel, 296 F.2d at 922.  The email (Ex. M, No. 59) is therefore subject to production.

With respect to the second July 21, 2008 email from Belli to Attorney Hadlock, defendants do not satisfy their burden to show that the attorney client privilege applies.  Mark was not copied on the email and she testified at her deposition that Belli was just "a support system" and "offer[ed] advice" during this time period.  (Docket Entry # 102-1, Ex. A).  The email from Belli and

20

the reply are therefore not protected.  (Ex. M, No. 60).

In contrast, the May 14, 2008 email to Belli from Attorney
Hadlock's assistant with a copy to Attorney Hadlock responds to
data and documents required by Mark to effectuate a change in
control.  It is legal advice in response to a telephone
conversation between Belli, acting on behalf of Mark, and the
assistant.  It is not subject to production.  (Ex. M, No. 61).
The thank you note, however, which only generally references
documents needed for licensing, a subject disclosed by Attorney
Hadlock during his deposition, is not privileged.  In addition,
the email does not seek legal advice and is therefore subject to
production.  (Ex. M, No. 62).

With respect to the May 9 and 13, 2008 emails from Attorney
Hadlock to Belli referring to an attached promissory note and a
revision to certain paragraphs, defendants waived any protection
afforded the promissory note and drafts because their counsel
attached "the various versions of the Sale Agreement and Note
found in [Attorney] Hadlock's files" in a February 25, 2013 email
to opposing counsel.  (Docket Entry # 102-1, Ex. D).  Likewise,
the April 23 and 24, 2008 emails from Belli to Attorney Hadlock
attaching draft versions of the sale agreement are also subject
to production because of the aforementioned waiver.  The same
reasoning applies to a May 19, 2008 email from Belli to Attorney
Hadlock expressing an inability to open an attached file with a

revised sale agreement.  Alternatively, defendants fail in their burden to establish the privilege because they do not address the communications in opposing plaintiff's motion.  <u>See</u> <u>Commissioner of Revenue v. Comcast Corp.</u>, 901 N.E.2d at 1195 ("[a]s the party asserting the privilege, Comcast bears the burden of establishing that the attorney-client privilege applies to the Andersen memoranda").  The emails are therefore subject to production. (Ex. M, Nos. 64, 65, 69, 70 & 82).

On April 29, 2008, Attorney Hadlock emailed Belli, who was acting on behalf of Mark, and attached a change in control report for the transaction between Martinelli and Mark.  The confidential communication (Ex. M, No. 67), occurring shortly after the change in control planning communication (Ex. M, No. 68), is privileged.

As to the July 20, 2008 email from Belli to Attorney Hadlock, there is no indication that it constituted a communication made in confidence with an expectation it would not be divulged.  <u>See</u> <u>id.</u> at 1196.  At her deposition, Mark downplayed Belli's role during the transition period and there is little indication that she sought legal advice about the title request or that Belli was acting on her behalf relative to this request for information.  The email is therefore subject to production.  (Ex. M, No. 71).

The same reasoning applies to the Wachovia emails.  (Ex. M,

Nos. 73, 74 & 77).  There is little to indicate that Mark, the client, sought the information from Attorney Hadlock or that Belli was acting on her behalf in seeking Attorney Hadlock's comments.  Defendants do not address the emails and fail in their burden to show that the privilege applies to the emails.

The June 16, 2008 email from a member of Attorney Hadlock's staff to Belli with a copy to Attorney Hadlock does not reflect a confidential communication made to render legal services.  See Chambers v. Gold Medal Bakery, Inc., 983 N.E.2d at 691 ("attorney client privilege only protects against disclosure of confidential communications made to render legal services" and "does not immunize underlying facts").  Instead, in response to a conversation with Belli, the staff member provides instructions to set up a loan originator account on a public website that contains the instructions and prompts.  The email (Ex. M, No. 78) is subject to production.

The June 14, 2008 email from Belli to Attorney Hadlock and the same staff member seeks information originally sought by Martinelli from Belli.  Belli's email reflects that Martinelli is seeking the information and there is no indication that Belli expected that the communication to Attorney Hadlock or his response would remain confidential.  Moreover, defendants do not address the email and fail to show that the privilege applies to it.  Accordingly, the email is subject to production.  (Ex. M,

No. 79).

In contrast, the June 10, 2008 email from Attorney Hadlock's staff member to Belli and Mark with a copy to Attorney Hadlock is a confidential communication made for the purpose of rendering legal services.  Similarly, the June 6, 2008 email to Attorney Hadlock from Belli, on behalf of Mark, seeks legal advice for Mark.  Neither email is subject to production.  (Ex. M, Nos. 80 & 81).

CONCLUSION

In accordance with the foregoing discussion, the motion to compel (Docket Entry # 101) is **ALLOWED** in part and **DENIED** in part.  Defendants shall produce the documents that are not subject to the attorney client privilege on or before October 18, 2013.

      /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge